UNITED STATES, Appellee,

v.

Michael N. FREDERICK, Private First
Class, U. S. Marine Corps, Appellant.

No. 32,159.

NCM 74–2576.

U. S. Court of Military Appeals.

July 25, 1977.

*Walter A. Smith, Jr.*, Esquire, argued the cause for Appellant, Accused. With him on the brief was *Captain Eugene A. Ritti*, USMCR.

*Lieutenant Steven D. Moore*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress*, USMC.

Opinion of the Court

COOK, Judge:

The appellant was tried by a general court-martial and contrary to his plea was convicted of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. He was sentenced to a dishonorable discharge, confinement at hard labor for 75 years, total forfeitures, and reduction to the lowest enlisted grade. The findings and sentence were approved by the convening authority, and his action was affirmed by the United States Navy Court of Military Review.

During an Article 39(a)[1] session, the defense counsel submitted a motion for the engagement of a civilian psychiatrist at Government expense. *See United States v. Johnson*, 22 U.S.C.M.A. 424, 47 C.M.R. 402 (1973). The motion was denied, but because the evidence raised a possible issue of insanity, the military judge, with the concurrence of the defense, ordered a psychiatric evaluation of the appellant by a military sanity board. *See* paragraph 122, Manual for Courts-Martial, United States, 1969 (Revised edition). A written order was issued from the court which required that, at the board examinations, Article 31[2] warnings be given to appellant, that the defense counsel be allowed to be present,[3] and that

---

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

2. UCMJ, 10 U.S.C. § 831.

3. Several Federal courts have held an accused has no right to have his counsel present during a court-ordered psychiatric examination. *United States v. Cohen*, 530 F.2d 43 (5th Cir. 1976); *United States v. Trapnell*, 495 F.2d 22 (2d Cir. 1974), *cert. denied*, 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974); *United States v. Baird*, 414 F.2d 700 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); *United States v. Albright*, 388 F.2d 719 (4th Cir. 1968). This Court has also so held. *United States v. Wilson*, 18 U.S.C.M.A. 400, 40 C.M.R. 112 (1969).

the contents of the report be kept from the Government. In due course, the psychiatric board submitted its report to the military judge. On reviewing it, he perceived what he believed was an ambiguity; specifically, although the board members found the appellant had been unable to adhere to the right at the time of the offense, they nonetheless classified his mental condition as a personality disorder, which the judge regarded as a condition incapable of producing an inability to adhere to the right. The judge indicated that he would require another psychiatric examination if the defense actually raised insanity as an issue. Defense counsel declared that he proposed to raise such an issue and over counsel's objection, the judge ordered another examination and further ruled that if the defense called a psychiatrist as a defense witness, the Government would be given access to any psychiatric reports the witness may have previously prepared.

No expert testimony as to appellant's mental condition at the time of the offense was introduced by the prosecution. However, the defense presented the testimony of the two psychiatrists on the board which had examined the appellant pursuant to the first court order and, in rebuttal, the Government called the psychiatrist who participated in the second examination. We have granted review to consider the following questions:

I. Whether the military judge erred by requiring the appellant to submit to a second psychiatric examination.

II. Whether the testimony of the psychiatrists violated the appellant's right against self-incrimination as provided by Article 31, UCMJ, 10 U.S.C. § 831.

III. Whether the trial court erred by evaluating the appellant's mental responsibility under the standards set forth in paragraph 120*b*, MCM.

In *United States v. Babbidge*, 18 U.S.C.
M.A. 327, 40 C.M.R. 39 (1969), the Court held that an accused could be required to submit to a psychiatric examination as a condition precedent to the admission of defense evidence on the issue.[4] The appellant submits that *Babbidge* precludes subjection of an accused to more than one psychiatric examination. The argument is founded on a misconstruction of the intent and purpose of *Babbidge*. Underlying the holding in *Babbidge* was the recognized fact that the defense of insanity occupied a preferred status in military law and the defense was unique in that a complete inquiry into the matter necessarily required an examination of an accused's mental processes, which, in turn, required a psychiatric interrogation. Thus, the Court would not permit an accused to raise the issue of insanity predicated upon a psychiatrist's opinion which was based upon an accused's voluntary statements, and then refuse to submit himself to a similar examination by a Government witness.

■ Contrary to the appellant's argument, *Babbidge* did not limit the number of psychiatric examinations. Indeed, its rationale emphasized the prevention or frustration of a search for the truth by a defense maneuver which this Court described as " 'a travesty on justice,' " or " 'an absurdity' " and declared that it " 'violate[s] judicial common sense.' " *Id.* at 332, 40 C.M.R. at 44. Subsequently, in *Lozinski v. Wetherill*, 21 U.S.C.M.A. 52, 44 C.M.R. 106 (1971), the Court specifically held that an additional pretrial psychiatric examination was appropriate where the convening authority was faced with conflicting psychiatric reports. *See United States v. Erb*, 12 U.S.C.M.A. 524, 31 C.M.R. 110 (1961); paragraph 121, MCM. The original examination in the present case produced a possible ambiguity. Under the circumstances, the question of

---

4. After the date of our decision in *United States v. Babbidge*, 18 U.S.C.M.A. 327, 40 C.M.R. 39 (1969), Fed.R.Crim.P. 12.2(c) was adopted which provides for a court-ordered psychiatric examination to determine mental responsibility. Even before the adoption of the rule, however, such examinations were or-

dered by Federal civilian courts on the basis of the inherent power of the court. *See United States v. Reifsteck*, 535 F.2d 1030 (8th Cir. 1976); *United States v. Cohen, supra; United States v. Trapnell, supra; United States v. Malcolm*, 475 F.2d 420 (9th Cir. 1973); *United States v. Baird, supra.*

whether another examination was necessary was a matter within the discretion of the military judge, and we find nothing inconsistent with the Court's opinion in *Babbidge*.

The appellant testified in his defense and stated he became involved in an intimate relationship with a friend's wife, the victim. He admitted that he had killed her, but contended he was unable to remember all the circumstances of the incident. He recalled that she began to question him about a pending rape charge against him and he became enraged; he placed his hands on her shoulders and began to count because he had been taught that this was a means of controlling his temper. He remembered falling on the victim and then being conscious of a knife in his hands. During cross-examination, the prosecution confronted the appellant with three pretrial statements he had made in which he gave a more detailed account of the incident, including an admission that he had choked the victim, had banged her head against the floor, and after noting she was still breathing, had left the room and returned with a steak knife which he used to stab her.[5] Appellant attempted to explain away the specificity of the pretrial statements. He represented that he did not actually remember the manner mentioned in the statements, but recounted them to his investigators because he "thought" they had happened.

Two psychiatrists participated in the original examination of appellant. They were both called as defense witnesses and testified that the appellant was unable to adhere to the right at the time of the offense. On direct examination, defense counsel asked questions which required the psychiatrists to explain the details of their interviews with appellant, including various statements made by him during the interviews. On cross-examination, trial counsel asked various questions as to what effect the three aforementioned pretrial statements had on their opinions, but some of the answers also included comments on the psychiatric interviews. The trial counsel did, however, ask one question directly related to these interviews, i. e., did the appellant indicate in any of the interviews whether he knew it was wrong to kill the victim. Finally, the Government called the only psychiatrist who participated in the second examination and he expressed the opinion that appellant was able to adhere to the right. His testimony contains no reference to the statements of appellant which were made during that interview.

■ Appellant correctly observes that while *Babbidge* permits a psychiatric examination without advising an accused of his Article 31 rights, normally only expert conclusions as to his mental condition are admissible—not the statements of an accused which were made during the examination. *Compare United States v. Ross,* 19 U.S.C.M.A. 51, 41 C.M.R. 51 (1969); *United States v. Schell,* 18 U.S.C.M.A. 410, 40 C.M.R. 122 (1969); and *United States v. Wilson,* 18 U.S.C.M.A. 400, 40 C.M.R. 112 (1969), *with United States v. White,* 19 U.S.C.M.A. 338, 41 C.M.R. 338 (1970). As previously noted, the court order required that appellant be advised of his Article 31 rights during the initial psychiatric examination and the report of the psychiatrists involved reflects that appellant was advised of these rights. Additionally, the defense counsel was present during both of the examinations in question. However, the psychiatrists involved never specifically testified as to the substance of the warnings which were given during the initial examination. Because there was no affirmative demonstration on the record of the rights involved, the appellant submits the examination of the psychiatrists exceeded the permissible limits. We disagree.

■ The Government must normally prove the voluntariness of a pretrial statement, even in the absence of an objection by the defense. *United States v. Smith,* 15 U.S.C.M.A. 416, 35 C.M.R. 388 (1965). However, the defense may consent to the use of pretrial statements, without any evidence

---

5. An adequate basis for the admission of the pretrial statements appears in the record.

of the required preliminary advice. *United States v. Gilliard,* 20 U.S.C.M.A. 534, 43 C.M.R. 374 (1971); *United States v. Gustafson,* 17 U.S.C.M.A. 150, 37 C.M.R. 414 (1967). While there were various references that the appellant was advised of his Article 31 rights, the substance of these rights is not reflected in the record. However, under the circumstances of the present case, we hold the appellant consented to the use of his statements which were made during the psychiatric interviews. The original references to the statements in question were made upon direct examination by the defense counsel. Indeed, the defense counsel was confronted with a possible conflict between several admissions of the appellant which indicated appellant remembered the details of the incident and a defense of insanity which was partially predicated on appellant's inability to remember. Thus, the defense elicited testimony from the psychiatrists that, in view of various statements made by the appellant during the interviews, the appellant was, nevertheless, unable to adhere to the right.[6] Accordingly, the defense consented to the admissibility of the evidence by his own use of the statements in question.[7] *See United States v. Baird,* 414 F.2d 700 (2d Cir. 1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); *Wallace v. United States,* 360 F.2d 939 (5th Cir. 1966), *cert. denied,* 385 U.S. 977, 87 S.Ct. 518, 17 L.Ed.2d 439 (1966); *Ashton v. United States,* 116 U.S.App.D.C. 367, 324 F.2d 399 (1963).

We turn now to the issue involving the test of mental responsibility. The military judge's instructions on mental responsibility encompassed the standard as set forth in paragraph 120*b*, MCM. This paragraph provides:

A person is not mentally responsible in a criminal sense for an offense unless he was, at the time, so far free from mental defect, disease, or derangement as to be able concerning the particular act charged both to distinguish right from wrong and to adhere to the right. The phrase "mental defect, disease, or derangement" comprehends those irrational states of mind which are the result of deterioration, destruction, or malfunction of the mental, as distinguished from the moral, faculties. To constitute lack of mental responsibility, the impairment must not only be the result of mental defect, disease, or derangement but must also deprive the accused of his ability to distinguish right from wrong or to adhere to the right as to the act charged.

This standard is commonly referred to as the *M'Naghten*[8] standard with the addition of the irresistible impulse test. We are urged to reject this standard and join the vast majority of the Federal circuits which have adopted the definition of insanity recommended by the American Law Institute (ALI). That test provides:[9]

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.

(2) As used in this Article, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

At the outset the Government submits the standard of mental responsibility is a rule of procedure and, therefore, the Court must accept the standard set forth in paragraph 120*b*, MCM, as a valid exercise of the President's power to prescribe rules of procedure under Article 36, UCMJ, 10 U.S.C. § 836. We disagree.

---

**6.** In essence, the defense attempted to prove the appellant did not remember the details of the incident but merely reconstructed them from his limited memory.

**7.** We note the military judge instructed the court members that the statements in question were limited to the issue of mental responsibility.

**8.** M'Naghten's Case, 10 Cl. & F. 200, 8 Eng.Rep. 718 (H.L. 1843).

**9.** Model Penal Code § 4.01, Proposed Official Draft (May 4, 1962).

In *United States v. Kunak*, 5 U.S.C.M.A. 346, 17 C.M.R. 346 (1954), this Court considered whether the standard adopted for the Court of Appeals for the District of Columbia Circuit in *Durham v. United States,* 94 U.S.App.D.C. 228, 214 F.2d 862 (1954), should apply to the military. Although the Court determined that the definition of insanity expounded in paragraph 120, Manual for Courts-Martial, United States, 1951, was preferable to the *Durham* standard, it specifically remarked that it was unnecessary to decide whether the standard delineated therein represented a valid exercise of the President's rule-making powers. The dissenting judge, while disagreeing with the majority for other reasons, clearly implied that the Manual was no obstacle to a redefinition of the standard: [10]

> On the first point, although I am normally inclined to apply to the military the established law of the Federal civilian jurisdiction, when it is not contrary to or incompatible with express provisions of military law, I believe that no uniform Federal standard has yet been formulated. Other Courts of Appeals have not acted on the matter and no solid core of Federal precedent exists. Of course, the absence of such precedent does not require uncritical adherence to outmoded and acknowledged inadequate standards. But, while the Durham case is indeed persuasive, I think that, in so controversial an area, we should proceed with extreme care. For the time being, therefore, I think that it is better to adhere to the rule presently set out in the Manual for Courts-Martial.

Contemporaneous with *Kunak,* the Court decided *United States v. Smith,* 5 U.S.C.M.A. 314, 17 C.M.R. 314 (1954). Referring to *Kunak,* the principal opinion said that "the law determining mental responsibility is not an open question"; it went on to express the view that, because the Service Secretaries had been empowered to commit insane persons, it was desirable to adhere to

the standard in the Manual. 5 U.S.C.M.A. at 321–322, 17 C.M.R. at 321–322. The opinion reached such a conclusion because: [11]

> The authority to determine who shall be committed as insane should in practice be linked with the determination of who shall be acquitted as mentally irresponsible—since in the ordinary case, a person properly acquitted by reason of insanity requires treatment in a mental institution. Yet, unless commitment procedures are integrated with the administration of criminal law, there is more than a fair risk that an accused may avoid both the jail and the asylum. Naturally, integration of these procedures can best be achieved by providing that the rules concerning commitment on the one hand, and criminal responsibility, on the other, issue from the same source. Since Congress has expressly entrusted the determination and administration of commitment procedures to the executive branch—of course, with review of its action through habeas corpus—we find no anomaly in concluding that Congress may also have acquiesced in the formulation by the Chief Executive of standards for determining sanity in trials by court-martial.

*Kunak* and *Smith,* therefore, yield a preference for, but not an adherence to, the standard of mental responsibility set forth in the Manual for Courts-Martial, 1951. As a matter of binding law, the Court accepted that standard after assessment of competing judicial standards and a reasoned judgment as to its continued usefulness in light of modern developments in the field of psychiatry. Indeed, in the related matter of partial mental responsibility, this Court has not been hesitant to take cognizance of the advances of psychiatry. As noted in *United States v. Vaughn,* 23 U.S.C.M.A. 343, 344, 49 C.M.R. 747, 748 (1975) (footnote omitted):

> The doctrine of partial mental responsibility in this Court originated in its decisions in *United States v. Kunak,* 5 U.S.C.

---

10.  *United States v. Kunak,* 5 U.S.C.M.A. 346, 369, 370, 17 C.M.R. 346, 369, 370 (1954) (Quinn, Chief Judge).

11.  *United States v. Smith,* 5 U.S.C.M.A. 314, 322, 17 C.M.R. 314, 322 (1954).

M.A. 346, 17 C.M.R. 346 (1954), *United States v. Edwards*, 4 U.S.C.M.A. 299, 15 C.M.R. 299 (1954), and *United States v. Higgins*, 4 U.S.C.M.A. 143, 15 C.M.R. 143 (1954). Recognizing that advances in modern psychiatry have enabled an accused's mental condition to be more accurately diagnosed and that the degree of one's guilt should take into consideration his capacity to entertain the intent or knowledge required to prove the crime charged, those cases concluded that mental incapacity to entertain a premeditated design to kill, a requisite specific intent or knowledge, or any particularized state of mind should be a defense to a charged offense requiring such a state of mind.[12]

While the Court held in *United States v. Morris*, 20 U.S.C.M.A. 446, 43 C.M.R. 286 (1971), that insanity was an affirmative defense for the purpose of resolving an issue as to whether the Government had met its burden of proof, as we observed in another context in *Babbidge*:[13]

> The burden of proving the sanity of the accused is always on the prosecution. Insanity has been set apart as something different from an affirmative defense. It is not a mitigating circumstance but is, instead, a complete defense to a crime. *United States v. Burns*, 2 U.S.C.M.A. 400, 9 C.M.R. 30 [1953].

■ In *United States v. Smith*, 13 U.S.C.M.A. 471, 474, 33 C.M.R. 3, 6 (1963), this Court struck down a clause in the Manual that was inconsistent with an affirmative defense of self-defense, because the area of affirmative defenses was a matter of substantive law. As to the question of whether mental responsibility is a rule of proce-

dure or substantive law, we note that the Court of Appeals for the Third Circuit remarked in *United States v. Currens*, 290 F.2d 751 (1961), that in adopting a new standard for mental responsibility, it was developing "substantive law." If the matter was not clearly settled earlier, we now hold that the standard for determining complete mental responsibility, as with partial mental responsibility, is a matter of substantive law whether the standard is termed an affirmative defense or some other type of defense. Therefore, the adoption of the standard for mental responsibility is not within the scope of the President's rule-making powers under Article 36 UCMJ. No such standard has been adopted by Congress. Necessarily, therefore, the duty of defining this standard must be borne by the courts which are required to determine the accused's mental responsibility. This duty has been consistently recognized by the Federal civilian courts.

Presently some form of the ALI standard has been adopted by all but one of the Federal circuits.[14] The remaining circuit has commended to the district court's attention the cases which have accepted the ALI standard. *Beltran v. United States*, 302 F.2d 48 (1st Cir. 1962). Recently the District of Columbia Court of Appeals rejected the *Durham* test and accepted the ALI standard for mental responsibility. *Bethea v. United States*, 365 A.2d 64 (D.C.App. 1976). Various reasons have been expressed for the rejection of both the *M'Naghten* and *Durham* standards.

The *M'Naghten* standard has been criticized on several grounds, including that it

---

12. The doctrine of partial mental responsibility is now incorporated in paragraph 120c, Manual for Courts-Martial, United States, 1969 (Revised edition). However, when the concept was first developed by this Court, the Manual was silent on the matter. *See* paragraph 120, Manual for Courts-Martial, United States, 1951. Furthermore, *United States v. Vaughn*, 23 U.S.C.M.A. 343, 49 C.M.R. 747 (1975), overruled paragraph 120c, MCM, 1969 (Rev.), to the extent it precluded the application of the doctrine to a charge of unpremeditated murder.

13. 18 U.S.C.M.A. at 329, 40 C.M.R. at 41.

14. *United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969 (1972) (*en banc*); *United States v. Frazier*, 458 F.2d 911 (8th Cir. 1972); *Wade v. United States*, 426 F.2d 64 (9th Cir. 1970) (*en banc*); *Blake v. United States*, 407 F.2d 908 (5th Cir. 1969) (*en banc*); *United States v. Smith*, 404 F.2d 720 (6th Cir. 1968); *United States v. Chandler*, 393 F.2d 920 (4th Cir. 1968) (*en banc*); *United States v. Shapiro*, 383 F.2d 680 (7th Cir. 1967) (*en banc*); *United States v. Freeman*, 357 F.2d 606 (2d Cir. 1966); *Wion v. United States*, 325 F.2d 420 (10th Cir. 1963) (*en banc*), *cert. denied*, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964); *United States v. Currens*, 290 F.2d 751 (3d Cir. 1961).

ignores the medical aspects of insanity and was predicated on a layman's misunderstanding of the functions of the human mind.[15] *See United States v. Currens, supra* at 770 n. 29. Furthermore, the critics correctly note that, even assuming the existence of some medical basis, substantial advances have been made in the field of psychiatry since the period of *M'Naghten* and the standard is not in harmony with modern science. *See Wion v. United States,* 325 F.2d 420, 425 (10th Cir. 1963) (*en banc*), *cert. denied,* 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964). *See generally United States v. Vaughn, supra.* Another weakness perceived in the *M'Naghten* standard is that it fails to recognize that the concept of mental responsibility includes three elements, *i. e.,* medical, moral, and legal considerations. Even the more modern *Durham* rule was found to inadequately distinguish the three elements involved. *United States v. Brawner,* 153 U.S.App.D.C. 1, 471 F.2d 969, 983 (1972) (*en banc*); *United States v. Freeman,* 357 F.2d 606, 623 (2d Cir. 1966); *United States v. Currens, supra* at 771, *citing United States v. Smith,* 5 U.S.C.M.A. 314, 17 C.M.R. 314 (1954). Because the medical expert under the *M'Naghten* standard is required to express an opinion in absolute terms, that is complete lack of capacity, such an opinion necessarily includes all three of the components of mental responsibility.[16] Thus, despite instructions to the contrary, a situation existed whereby the medical expert was exerting undue influence in the nonmedical components. While the *M'Naghten* standard of insanity was expressed in terms of absoluteness, it was recognized that this was unrealistic and incompatible with medical science

which does not classify mental conditions in absolute terms. Consequently, the ALI's use of the term "substantial" was found to be more compatible with medical terminology. *United States v. Shapiro,* 383 F.2d 680, 685 (7th Cir. 1967) (*en banc*); *Wion v. United States, supra* at 430. The irresistible impulse test has also befallen similar criticism. *United States v. Frazier,* 458 F.2d 911, 916–17 (8th Cir. 1972).

We are in agreement with the courts that have held that the ALI test is superior to the *M'Naghten*-irresistible impulse standard. With them, we believe the test is more compatible with modern medical science and that it tends to lessen the influence of the experts on the nonmedical components of mental responsibility. We recognize that the adoption of the ALI test has not been without variations. In *Currens, supra* at 774 n. 32, for example, the Court of Appeals for the Third Circuit excluded the phrase "to appreciate the criminality of his conduct" from the test because it believed it overemphasized the cognitive aspect of mental responsibility. We disagree, as the cognitive and volitive elements are expressed in the disjunctive. We do not share the Third Circuit's concern that the cognitive element is mere surplusage, but, rather, conclude the court members should be instructed on both.

Other courts have substituted the word "wrongfulness" for the word "criminality," to exclude criminal responsibility in those cases where a defendant realizes his conduct is criminal but because of a delusion, believes his action is morally justified. *Wade v. United States,* 426 F.2d 64, 71 n. 9 (9th Cir. 1970). Our analysis of the issue convinces us that the term "criminality" is

---

15. Some commentators have suggested that various political considerations influenced the adoption of the *M'Naghten* rule. *See* Cutts, *Criminal Responsibility: The New Federal Rule v. Military Law,* 13 AFJAG L.Rev. 202 (Summer—1971).

16. While the term "completely" was incorporated in the definition of insanity as set forth in paragraph 120*b*, MCM, 1951, the term was omitted from the 1969 Revised edition. However, such term was omitted on the basis it was

redundant. Accordingly, there appears to have been *no change in the standard of mental responsibility. United States v. Collier,* 49 C.M.R. 719 (A.F.C.M.R.1975), *rev'd on other grounds,* 24 U.S.C.M.A. 183, 51 C.M.R. 428, 1 M.J. 358 (1976); *United States v. Emerson,* 44 C.M.R. 602 (A.C.M.R.1971), *petition denied,* 44 C.M.R. 939; *see* Department of the Army Pamphlet No. 27–2, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition), page 24–1.

the preferable alternative. *See United States v. Chandler,* 393 F.2d 920 (4th Cir. 1968) *(en banc).* If a defendant possesses substantial capacity to both appreciate the criminality of his conduct and to conform his conduct to the law, he should not escape criminal responsibility because his personal moral code is not violated. Contrarily, if his delusion is of such a nature that he believes his otherwise criminal act is not criminal, he will not be held responsible.

In *United States v. Smith,* 404 F.2d 720, 727 n. 8 (6th Cir. 1968), the Court, while adopting § 4.01(1), rejected § 4.01(2), apparently on the basis there was substantial dispute as to the soundness of this provision. It was rejected in *Wade v. United States, supra* at 73 (emphasis in original), because:

> [I]t is practically inconceivable that a mental disease or defect would, in the terms of paragraph (2), be "manifested *only* by repeated criminal or otherwise anti-social conduct."

While the provision was rejected in *Brawner, supra* at 973, the court's rejection was predicated on its own formulation of a definition of mental disease. However, we perceive the provision as necessary to insure that mental responsibility is a distinct and separate concept from criminal and antisocial conduct. As expressed in *United States v. Freeman, supra* at 625 (emphasis in original):

> There may be instances where recidivists will not be criminally responsible, but this will be for determination in each individual case depending upon other evidence of mental disease augmenting mere recidivism with the ultimate determination dependent upon the proper application of the standards we have adopted. But, we stress, repeated criminality cannot be the *sole* ground for a finding of mental disorder; a contrary holding would reduce to absurdity a test designed to encourage full analysis of all psychiatric data and would exculpate those who knowingly and deliberately seek a life of crime.

Therefore, we agree with those courts which have not rejected § 4.01(2). *Bethea v. United States, supra; United States v. Frazier, supra; Blake v. United States,* 407 F.2d 908 (5th Cir. 1969) *(en banc); United States v. Chandler, supra.*

■ Left for consideration is whether the standard we adopt today should be applied to the appellant's trial. Five Federal circuits which have addressed the question have applied the new standard to cases under consideration, cases pending on direct appeal as of the date of the decision announcing the new standard, and all future cases. Thus, the new standard has been applied to those cases within the appellate process, but not to those cases which have become final. *United States v. Frazier, supra; Wade v. United States, supra; Blake v. United States, supra; United States v. Smith, supra; United States v. Tarrago,* 398 F.2d 621 (2d Cir. 1968). As with the adoption of the ALI standard itself, we conclude the military practice should be in harmony with its civilian counterpart. Furthermore, the defense of insanity occupies a preferred status in the military. *United States v. Walker,* 20 U.S.C.M.A. 241, 246, 43 C.M.R. 81, 86 (1971). Accordingly, we shall apply our adoption of the ALI standard to the present case, and to those cases pending appeal as of the date of this opinion, and to all cases tried in the future. Those convictions which have become final within the meaning of Article 44(b), UCMJ, 10 U.S.C. § 844(b), will not be affected.

■ Finally, the present record must be examined to determine if there is a fair risk of prejudice to the appellant from the use of the rejected standard of mental responsibility. *Compare United States v. Chandler, supra, with United States v. Brawner, supra.* In this regard there was considerable defense evidence that appellant was unable to adhere to the right, and under the circumstances we, therefore, conclude that appellant was prejudiced.

The decision of the United States Navy Court of Military Review is reversed. A rehearing may be ordered.

Chief Judge FLETCHER and Judge PERRY concur.