**UNITED STATES, Appellee,**

v.

**Staff Sergeant Percey C. CHAPMAN,
SSN 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, United States
Army, Appellant.**

**CM 434872.**

U. S. Army Court of Military Review.

30 Dec. 1977.

Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, Captain Buren R. Shields, III, JAGC, and Captain Donald R. Jensen, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Major Steven M. Werner, JAGC, Major Michael B. Kennett, JAGC, and Captain Dale L. Anderson, JAGC, were on the pleadings for appellee.

Before JONES, MITCHELL and DeFORD, Appellate Military Judges.

OPINION OF THE COURT

DeFORD, Judge:

The appellant was convicted contrary to his pleas, of attempted murder and attempted robbery in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.

Our review of the appellant's case is pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Appellant's principal defense at trial was temporary insanity. A defense expert witness testified that the appellant suffered a psychosis which took the form of a dissociative reaction at the time of the alleged act. The expert witness further testified that he believed that the appellant could not adhere to the right.

The defense testimony was received and evaluated by the Court under the commonly described M'Naghton Standard of Insanity.[1]

During the pendency of appellant's appeal, the United States Court of Military Appeals decided *United States v. Frederick*.[2] In that opinion, the Court rejected the M'Naghton Standard in favor of the American Law Institute (ALI) definition of insanity.[3] Further, that Court decreed that the ALI Standard on insanity would be applicable to all cases pending appeal on the date *Frederick, supra*, was released (25 July 1977).

Lastly, *Frederick, supra*, authorized an examination of the record to determine if there was a fair risk of prejudice to the appellant from the use of the rejected M'Naghton Standard.

---

1. *See* paragraph 120, Manual for Courts-Martial, United States, 1969 (Revised edition).

2. 3 M.J. 230 (CMA 1977).

3. *See United States v. Frederick, supra* at page 234.

Here, as in *Frederick*, there was considerable evidence that appellant could not adhere to the right. Under the circumstances, we conclude that the appellant was prejudiced.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

JONES, Senior Judge, concurring:

I agree that the new insanity standard adopted in *United States v. Frederick*, 3 M.J. 230 (CMA 1977), must be applied to this case. An examination of the record indicates "there is a fair risk of prejudice to the appellant from the use of the rejected standard." Thus the necessity for a rehearing.

The standard, drafted by the American Law Institute (ALI), and included in its Model Penal Code, provides:

"4.01 Mental Disease or Defect Excluding Responsibility.

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

"(2) As used in this Article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

One aspect of the new standard was not discussed in *Frederick*, namely, what is meant by the term "mental disease or defect." I believe a discussion of that phrase would be helpful.

The term "mental disease or defect" is not defined in the Model Penal Code. The second paragraph of the standard states what is excluded, "an abnormality manifested only by repeated criminal or otherwise antisocial conduct", but does not affirmatively state what is included.

One observer, in commenting on the American Law Institute standard, stated that a "precise definition of insanity is impossible", and "it is entirely sensible to leave 'mental disease' undefined . . ."[1] The Court of Military Appeals is among the Courts that have followed the latter approach, i. e., leaving the term undefined. Other courts, including two cases cited approvingly in *Frederick*,[2] have adopted the following definition from *McDonald v. United States*, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962):

"A mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls." 114 U.S.App.D.C. at 124, 312 F.2d at 851.

The Manual for Courts-Martial, United States, 1969 (Revised edition), at paragraph 120*b*, states that "[t]he phrase 'mental defect, disease, or derangement' comprehends those irrational states of mind which are the result of deterioration, destruction, or malfunction of the mental, as distinguished from the moral, faculties. . . ." That provision has been interpreted by the United States Court of Military Appeals and by this Court to exclude personality defects and character and behavior disorders. *United States v. Hernandez*, 20 U.S.C.M.A. 219, 43 C.M.R. 59 (1970); *United States v. Smith*, 5 U.S.C.M.A. 314, 17 C.M.R. 314 (1954); *United States v. Hood*, 47 C.M.R. 356 (A.C.M.R.1973).

When the Court of Military Appeals rejected the *Manual* test for insanity and adopted the ALI test, I believe it also adopted a new meaning for the term "mental disease or defect", at least to the extent that it rejected the prior interpretations which had excluded personality defects and character and behavior disorders. The facts of the *Frederick* case bear this out. Frederick was diagnosed as having a personality disorder. Under the *Manual* test,

---

1. A. Goldstein, The Insanity Defense (1967).

2. *Bethea v. United States*, 365 A.2d 64 (D.C. App.1975); *United States v. Frazier*, 458 F.2d 911 (8th Cir. 1972).

that condition would not qualify as a mental defect, disease, or derangement. However, as the lower court's decision in *Frederick* was reversed when examined in the light of the new standard, I can only conclude that under the new standard personality, character, and behavior disorders could be included in the term "mental disease or defect."

There is the exception, of course, found in the second paragraph of the standard which as stated above excludes from the term ". . . an abnormality manifested only be repeated criminal or otherwise antisocial conduct." This exclusion removes the "psychopathic personality" from the concept of mental disease or defect. Joint Committee on Continuing Legal Education of the American Law Institute and the American Bar Association, The Problem of Responsibility (1962).

I would urge the Court of Military Appeals in future decisions either to adopt the definition of the term "mental disease or defect" appearing in *McDonald* or to fashion its own definition.

MITCHELL, Judge, Concurring in part and dissenting in part:

I agree with my brother judges that the new insanity standard adopted in *United States v. Frederick*, 3 M.J. 230 (CMA 1977), must be applied to this case. The appellant's conviction was pending appeal as of the date of that opinion.

I further agree that since *Frederick* does not tell us what is meant by the term "mental disease or defect", an enlightening discussion of that phrase by the Court would have been helpful. This "blind spot" also appears in the American Law Institute's *Model Penal Code*, the military's newly adopted prismatic refractor of the shades of mental responsibility. It tells us by the gratuitous caveat-directed at the psychopathic offender—what is *excluded* but does not reveal the other side of the coin.[1]

What, if anything, is *included*? This appears to be still another example of the legal difficulties presented by the fact that there is no pure black or white in mental illness. Notwithstanding the difficult, if not impossible, task of defining mental disease the newly adopted formula makes its existence obligatory before the question of irresponsibility can even be considered.

The ALI test, essentially a more sophisticated and reworded expansion of the *M'Naghton* knowledge concept and the irresistible impulse idea, requires that the accused lack "substantial capacity" either to "appreciate the criminality [wrongfulness] of his conduct or to conform" it to the "requirements of law."

The next question that comes to mind is, "How substantial is 'substantial' "? We can all agree, I suppose, that substantial means something more than slight or not just a very little. But how much more? The age old puzzler: "When does a calf become a cow"?

Another matter of semantics, yet unresolved, which gives me trouble is the ALI's substitution of "appreciation" for "knowledge." While it widens the fact-finders scope of consideration of the accused's alleged cognitive impairment to include more than superficial rote-like literal answers to simple questions, I doubt that without helpful judicial guidance the lay members of a court-martial will be able to grasp the profound difference between "appreciation" and their common experience interpretation of anything that is "known or perceived."

Another pit-fall comes to mind. How will the average layman who sits on a military jury be able to grasp the legal significance of such an expression as "to conform his conduct to the requirements of the law"? One guess is as good as another.

For these reasons and for others which I do not yet foresee or fully appreciate, I agree with Judge Jones that we need con-

---

1. In all fairness it should be pointed out that the psychiatrist members of the ALI Advisory Committee felt sufficiently out of sympathy with the definition as finally drafted to publish a joint dissent. The support of the judges and lawyers seems to have been based primarily on deterrability.

sidered guidance including a realistic and down to earth definition of "mental disease." The military has been handed a brand new criminal responsibility "tester" and we now need written instructions as to how best to assemble it and make it work. I am fully aware of our option to utilize the "trial and error" method but I prefer to take off from "ground zero" on a pre-charted course applicable to all the armed forces.

I disagree with my brother, however, in urging the Court of Military Appeals to consider as one of its options the adoption of the definition of the term "mental disease or defect" appearing in *McDonald v. United States*, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962):

"A mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls." 114 U.S.App.D.C. at 124, 312 F.2d at 851.

To me this definition saddles us with a rule of law that could excuse almost any criminal conduct. Crimes committed while the perpetrator was emotionally affected by anger, hatred, spite, jealousy, envy and perhaps even love or pride conceivably could, in the mind of a layman, fall within this meaning. This places the court members in the position of having endless testimony concerning the life long development, adaptation and functioning of these emotional processes and controls. Rather than adopt the *McDonald* definition I would prefer the Court of Military Appeals formulate it's own or else leave us to our own devices which might be what they have intentionally already done.

However, I do not agree with my two brothers that the use of the insanity test (Paragraph 120, Manual for Courts-Martial, United States, 1969 (Revised edition)), considered by the military judge presiding over this bench trial amounted to prejudicial error requiring reversal and a new trial.

With respect to the exhaustive consideration of the various mental responsibility tests found in *Frederick* I suggest that the crucial decision with respect to the mental state of a defendant rests with the fact-finders, after they have heard the evidence and the court's instruction [except in a bench trial], and have had an opportunity to personally observe the defendant.[2]

At trial the defense presented the testimony of a psychiatrist who was of the opinion that at the time of the offense the accused was undergoing a "dissociative reaction",[3] and that he probably could not distinguish right from wrong or adhere to the right. This testimony was rebutted by two Army psychiatrists who arrived at a different diagnosis. The defense psychiatrist believed that during the week preceding the offense the accused succumbed to multiple pressures emanating from his family, school, and girlfriend. He lapsed into a dissociative episode which temporarily deprived him of his capacity to adhere to the right on the date of the crime. The accused's paramour was the primary source of his mental pressure. He had fallen victim to her nymphomania and his concern for her heroin addiction. To regain her lost love he felt that he had to stop being a military policeman momentarily by committing a major crime. He subconsciously wanted to excel the criminal exploits of her newly acquired boyfriend, who had recently robbed the Monmouth Mall Shopping Center. To me this represents an abnormality manifested only by antisocial conduct which is not a defense under either standard.

I hesitate to impose any iron-clad rule upon a court-martial with the disastrous result that the minor semantic variations which do not change the basic meaning would result in a reversal. When considering the testimony of all the witnesses, lay and expert, it is clear to me that whether the trial judge applied the *Manual* standard

---

2. *United States v. Igoe, Judge*, 7 Cir., 331 F.2d 766 (1964).

3. According to the witness this means: "A temporary reaction of the mind which deprived one of the capacity to adhere to the right . . . the primary purpose is to reduce unbearable anxiety."

or the *ALI* standard, the resulting determination of the accused's mental responsibility would have been the same. Under these circumstances, the failure to use the *ALI* definition, which at the time of the trial had not been adopted by the military did not prejudice the accused and cannot in my opinion constitute reversible error.

I would affirm.