UNITED STATES

v.

**William J. BUSH, 469 72 4999, Electrician's Mate Third Class (E–4), U.S. Navy.**

**NMCM 82 0083.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 27 April 1981.

Decided 29 Oct. 1982.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

Merlin H. Staring, Esq., Individual Defense Counsel.

MAJ Charles Wm. Dorman, USMC, Appellate Government Counsel.

Before SANDERS, Senior Judge, and BOHLEN and MICHAEL, JJ.

MICHAEL, Judge:

Appellant was convicted by a special court-martial, military judge alone, of two specifications alleging unauthorized absences from 15 December 1978 to 8 March 1979 and from 9 March 1979 to 17 November 1980, in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. He was sentenced to forfeitures of $300 pay per month for four months, reduction to pay grade E-1, and a bad-conduct discharge. The reviewing authorities below approved the findings and sentence as adjudged.

Appellant contends that he is not guilty of the two unauthorized absence offenses because the Government failed to prove appellant's mental responsibility: beyond a reasonable doubt. We agree with appellant's contention and reverse the decision of the lower court.

On 6 November 1980, appellant met with Doctor [S], Chairman of the Department of Psychiatry of Georgetown University School of Medicine, Washington, D.C., for the purpose of receiving an extensive psychiatric evaluation. Doctor [S] had been chairman of the psychiatry department for approximately twenty years and a member of the faculty since 1954. Subsequent to that visit, appellant met with Doctor [S] for five one-hour sessions. Doctor [S] also interviewed appellant's parents and referred appellant to a psychologist for psychological testing. From these interviews and the psychological report, Doctor [S] gleaned that appellant is nonassertive and has difficulty accepting criticism, has initiated suicidal gestures, did well in high school performance until he encountered the increased pressures of senior year, enlisted in the Navy because of the anxiety caused by his first semester of college, and was overwhelmed by the practicalities of his Navy responsibilities. From this information, Doctor [S] formed the opinion that appellant suffers from avoidant-personality disorder, a personality problem where the patient has difficulty dealing with responsibility and authority, and dysthymic disorder, a mental disease where the patient suffers from significant symptoms of depression, including suicidal tendencies. Doctor [S] recommended ongoing psychotherapy and believed that confinement and a punitive discharge would be devastating to appellant. Doctor [S] believed that appellant had the ability to distinguish right from wrong at the times of the offenses, but was of the opinion that appellant's ability to control his behavior was seriously impaired because of depression, anxiety, and feelings of panic on the inception dates of the unauthorized absences. In response to cross-examination by trial counsel, Doctor [S] testified that he was uncertain as to whether the disease appellant was suffering from "compelled" appellant to become an unauthorized absentee. Doctor [S] also related on cross-examination that appellant's mental condition is a "specific affective disorder," a less-severe form of mental disease than a "major affective disorder."

The testimony of Doctor [K], a psychiatrist at National Naval Medical Center,

Bethesda, Maryland, was offered by the Government in regard to appellant's mental responsibility. Doctor [K], at the date of his testimony, had practiced psychiatry for about six years and had about eleven years of military service. Doctor [K] and a Doctor [B]—another Navy psychiatrist stationed at National Naval Medical Center—interviewed appellant for about one hour on 27 March 1981, pursuant to an order for paragraph 121, *Manual for Courts Martial* 1969 (R.E.V.), board directed by the military judge. This interview took place over four months subsequent to the termination date of the second unauthorized absence and close to five months after appellant's initial meeting with Doctor [S]. At the time of the interview by the Government psychiatrists, appellant's duties were undemanding and relatively stress-free. Doctor [K] concluded that appellant suffered from a borderline personality disorder, which he termed a mental disease or defect. After his examination of appellant, however, Doctor [K] was of the opinion that, at the times of the offenses, appellant did not lack substantial capacity to appreciate the criminality of his actions or conform his conduct to the requirements of law. Doctor [K] further testified that he employed Doctor [S]'s report, the psychologist's report, and appellant's health record in arriving at this opinion. Doctor [B], according to the testimony of Doctor [K], concurs in this conclusion.

■■■ It is established that a military accused is not responsible for criminal conduct if at the time of the commission of such conduct as a result of a mental disease or defect he lacks substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. *United States v. Frederick,* 3 M.J. 230 (C.M.A.1977); *United States v. Martinez,* 12 M.J. 801 (N.M.C.M.R.1981); *United States v. Maldonado,* No. 81 1485 (N.M.C. M.R. 20 May 1982). Although an accused is presumed to be sane at the time of the commission of an offense, when evidence is introduced which reasonably tends to demonstrate the existence of a mental disease or defect at the time of the offense, the burden is on the Government to prove the mental responsibility of the accused beyond a reasonable doubt. *United States v. Martinez, supra; United States v. Riege,* 5 M.J. 938 (N.C.M.R.1978).

Both experts offering testimony at trial in the instant case concur in the opinion that appellant was suffering from a mental disease or defect, with the only disagreement in this regard as to what specific disease or defect afflicted appellant. There is also agreement between the two psychiatrists that appellant possessed the capacity to appreciate the criminality of his conduct. The significant divergence in their opinions is limited to whether the disease or defect resulted in a lack of substantial capacity on the part of appellant to conform his conduct to the requirements of law. We must, therefore, balance the contrary opinions of the two experts. *See United States v. Cleveland,* 6 M.J. 939 (A.C.M.R.1979).

■■■ We are provided with the following guidance in this determination by Judge Abernathy in *United States v. Martinez, supra:*

> The proper and effective analysis of varying expert psychological opinions is a difficult task, but certain factors emerge as helpful guideposts. The professional qualifications and expertise of the witness must be given high priority. While a brief period of examination or observation does not necessarily adversely affect any conclusion, the duration of a psychological interview or the length of diagnostic observation is an important consideration. The length of time elapsed from the date of offense to the date of examination is another reference. Also, the extent of personality background materials used by the examiner is another consideration. These factors, combined with the evidence presented about the circumstances of the case facilitate a resolution of conflicting expert psychological opinions.

*Id.* at 809. We agree with the Government that the degree of conclusiveness in which an expert is able to render his opinion is also of value as a factor to consider in

arriving at a determination as to an accused's mental responsibility. Contrary to the Government's assertion, however, an absence of conclusiveness is not apparent in the expert opinion offered by the defense in the case *sub judice.*

 Doctor [S], the defense expert, was unequivocal that appellant lacked substantial capacity to conform his conduct to the law at the times of the commission of the offenses. This, coupled with the presence of a mental disease or defect, is all that the law requires in order to find lack of mental responsibility. *E.g., United States v. Frederick, supra.* We find no merit in the Government's assertion that the defense psychiatrist's inability to conclude that appellant's mental disease "compelled" him to commit the offenses in question thereby renders the expert's testimony less persuasive.

> Nothing makes the inquiry into responsibility more unreal for the psychiatrist than limitation of the issue to some ultimate extreme of total incapacity, when clinical experience reveals only a graded scale with marks along the way.

*United States v. Brawner,* 471 F.2d 969, 991 (D.C.Cir.1972), *quoting* the American Law Institute's comments to § 4.01 of the Model Penal Code Tentative Draft # 4, p. 158. We adopt, therefore, the following language from page 11 of appellant's extensive response to the Government's reply:

> Any uncertainty which [Doctor [S]] may have professed as to whether the appellant's mental disease had the effect of "compelling" him to his unlawful actions is quite beside the point and cannot be considered to detract from Doctor [S]'s professional opinion relating to the severe impairment of the appellant's capacity to conform his conduct to the requirements of law.

We have balanced the differing expert testimony, aided by the factors set forth in *United States v. Martinez, supra.* Having done so, we must conclude that the Government failed to prove appellant's mental responsibility at the times of the offenses beyond a reasonable doubt. The findings and sentence are set aside and the Charge and its specifications are hereby dismissed.

Senior Judge SANDERS and Judge BOHLEN concur.