UNITED STATES, Appellee,

v.

Major Robert W. MARTIN, United
States Army, Appellant.

ARMY 9600413.

U.S. Army Court of Criminal Appeals.

7 Aug. 2000.

For Appellant: Mark L. Waple (argued);
Hugh R. Overholt (argued); Captain Joshua
E. Braunstein, JA (on brief); Colonel Adele
H. Odegard, JA.

For Appellee: Captain Kelly D. Haywood,
JA (argued); Lieutenant Colonel Edith M.
Rob, JA; Major Patricia A. Ham, JA (on
brief); Major Mary E. Braisted, JA.

Before CASIDA, CURRIE, and BOOTH,
Appellate Military Judges.

## OPINION OF THE COURT
## ON REMAND

CASIDA, Judge:

### HISTORY

A general court-martial composed of officers convicted appellant, contrary to his pleas, of attempted larceny, willfully disobeying a superior commissioned officer (four specifications), violation of a lawful general regulation (four specifications), larceny (twenty-nine specifications) and wrongful appropriation, forgery (four specifications), making and uttering checks without sufficient funds (four specifications), conduct unbecoming an officer and gentleman (twenty-eight specifications), obtaining services under false pretenses, and obstructing justice, in violation of Articles 80, 90, 92, 121, 123, 123a, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 890, 892, 921, 923, 923a, 933, and 934 [hereinafter UCMJ]. The court adjudged a sentence of dismissal, confinement for two years, forfeiture of all pay and allowances, and restriction to the limits of Fort Sam Houston, Texas, for two months. The convening authority disapproved one finding of guilty (larceny) and approved the adjudged sentence except for the restriction.

On appellate review pursuant to Article 66, UCMJ, 10 U.S.C. § 866, this court affirmed the findings and sentence on 5 August 1998. 48 M.J. 820. Subsequently, on 21 March 2000, the Court of Appeals for the Armed Forces set aside our decision and remanded the case to this court, stating:

> [I]t is not apparent what standard was employed in addressing the question of whether appellant carried his "burden of proving the defense of lack of mental responsibility by clear and convincing evidence." See Art. 50a(b), [UCMJ]. Therefore, it is necessary to return the record to the Judge Advocate General for remand for reconsideration of that question. On reconsideration, the court will determine whether the court-martial's finding that appellant did not prove lack of mental responsibility by clear and convincing evidence was correct both in law and in fact. See Art. 66(c), UCMJ[ ]; United States v. Turner, 25 M.J. 324 (CMA 1987).

53 M.J. 221, 222 (C.A.A.F.1999)(order).[1]

### FACTS

The principal facts are set out in this court's previous opinion. See 48 M.J. at 821–822. That court also made findings of fact, id. at 823–824, which we adopt. Cf. UCMJ art. 66(c). That panel also fairly summarized the expert testimony concerning appellant's mental condition. 48 M.J at 824–825.

### ASSIGNMENT OF ERROR

The assignment of error that was remanded for our consideration, as articulated in appellant's current brief before this court is:

THE EVIDENCE OF RECORD CLEARLY AND CONVINCINGLY ESTABLISHES THAT THE ACCUSED WAS NOT MENTALLY RESPONSIBLE DURING THE PERIOD OF THE CHARGED OFFENSES, EFFECTIVELY OVERCOMING THE PRESUMPTION OF MENTAL RESPONSIBILITY, AND THE GOVERNMENT'S EVIDENCE WAS INSUFFICIENT TO REFUTE THE DETERMINATION THAT THE ACCUSED WAS NOT MENTALLY RESPONSIBLE.

### STANDARD OF REVIEW

In this case, we will review questions of both law and fact de novo. Cf. Weiss v. United States, 510 U.S. 163, 168, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). The test we apply in determining the legal sufficiency of the evidence "is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." United States v. Tur-

---

1. Two other issues raised before our superior court concerned disqualification of the members of this court who decided this case when first reviewed. Those issues arose when apparently negative comments were made about appellant (a judge advocate) at an award ceremony in this agency and at a social function. Most of the then-members of this court were present at one or both functions. The three judges who are considering this case on remand were not present on either occasion.

*ner,* 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). For factual sufficiency, "the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of [this court] are themselves convinced of the accused's guilt beyond a reasonable doubt." *Turner,* 25 M.J. at 325; *see also* UCMJ art. 66(c).

■ This case is different from most others we review because, as noted below, on the issue of mental responsibility, the burden of proof and persuasion to prove lack of mental responsibility by clear and convincing evidence rests with the defense, *see* UCMJ art. 50a and *United States v. Dubose,* 47 M.J. 386, 388 (C.M.A.1998), whereas, of course, the burden of proof normally rests entirely with the prosecution. Even if the defense does not meet its burden on this issue, we must still be satisfied of appellant's guilt beyond a reasonable doubt. Shifting the burden of proof on mental responsibility to the accused does not, however, change the standard of review or the tests for either factual or legal sufficiency, as indicated by our superior court in the remand order in this case.

### THE LAW GOVERNING MENTAL RESPONSIBILITY

The current law governing the defense of lack of mental responsibility (insanity) was created by the Military Justice Amendments of 1986,[2] which enacted Article 50a, UCMJ. The substance of Article 50a, UCMJ, as set out below, is substantively identical to the Federal law[3] on insanity as a defense to criminal charges:

§ 850a. Art. 50a. Defense of lack of mental responsibility

(a) It is an affirmative defense in a trial by court-martial that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts. Mental disease or defect does not otherwise constitute a defense.

(b) The accused has the burden of proving the defense of lack of mental responsibility by clear and convincing evidence.

■ An accused is presumed to be mentally responsible for his acts until the accused establishes, by clear and convincing evidence, that he was not mentally responsible at the time of the alleged offense. Rule for Courts–Martial [hereinafter R.C.M.] 916(k)(3)(A). The determination of mental responsibility is a factual issue that must be resolved by the factfinder (in this case, the members of the court-martial); the military judge may not decide it as an interlocutory matter, *see* UCMJ art. 51(b); R.C.M. 916(k)(3)(C).

Prior to enactment of this statute, the mental responsibility standard that applied at trials by courts-martial was found in *United States v. Frederick,* 3 M.J. 230 (C.M.A. 1977). The test was:

A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [ ] of his conduct or to conform his conduct to the requirements of law.

*Id.* at 234, 238.

It is apparent that Congress, in the 1986 amendments, made at least four significant changes in the defense of lack of mental responsibility under military law. First, the statute now requires that the accused suffer from a *severe* mental disease or defect. Second, the "volitional prong" of the *Frederick* test (inability to conform conduct to the requirements of law) was eliminated. Third, while the previous rule excused criminal conduct when the accused merely lacked *substantial capacity* to appreciate the criminality of his acts, Article 50a requires that he be *unable* to appreciate the wrongfulness of his

---

**2.** *See* National Defense Authorization Act for Fiscal Year 1987, Pub.L. No. 99–661, 100 Stat. 3905; *Manual for Courts–Martial,* United States, (1995 ed.) app. 21, Rule for Courts–Martial 916(k) analysis, at A21–62.

**3.** *See* 18 U.S.C. § 17.

conduct, suggesting a greater lack of appreciation. Fourth, Article 50a(b) shifted the burden of proof (by clear and convincing evidence) to the defense, while the prosecution formerly was required to prove mental responsibility beyond a reasonable doubt.

## DISCUSSION

██ Six expert witnesses, three for each side, and dozens of lay witnesses testified concerning appellant's mental condition and his conduct during the period covered by the charges. That testimony is recorded in thousands of pages of trial transcript. The defense experts were two clinical psychiatrists and one clinical psychologist, all of whom had interviewed appellant and had reviewed voluminous documents relating to appellant's military records, and witness statements concerning the acts charged. The prosecution called three psychiatrists. One, a forensic psychiatrist, had interviewed appellant extensively and had reviewed the relevant documentation, including the results of psychological testing of appellant. The other two prosecution experts had not interviewed appellant, but had reviewed the written reports of the other experts and the other relevant documents.

The government conceded at trial that appellant suffered from bipolar disorder (formerly called "manic depressive disorder") during the period of the offenses and that his disorder qualified as a severe mental disease or defect under Article 50a(a), UCMJ. The issue contested at trial, on appeal, and on remand, is whether appellant, as a result of his bipolar disorder, was "unable to appreciate the nature and quality or the wrongfulness" of his acts at the time of the offenses. Cf. UCMJ art. 50a(a). It is clear from the record that appellant engaged in repeated illogical and self-destructive acts during the approximately twenty-eight-month period encompassing the offenses charged, and in many other aspects of his life during that period.

The issue of mental responsibility in the case was made very difficult by the sheer number of offenses, over seventy, alleged to

have occurred over an extensive period.[4] The three defense experts all opined that, during the entire period, appellant was unable to appreciate the wrongfulness of his conduct. None of them, however, focused their attention on any specific incident of criminal conduct to offer an opinion about appellant's mental responsibility at that specific time. In essence, their opinions were that appellant was unable to appreciate the wrongfulness of his acts at any time during that period. Two of the defense experts also appeared to confuse the relevant "cognitive" test with the now-irrelevant "volitional" test of Frederick. They also opined at times that appellant "lacked criminal intent" or lacked awareness of his violations of his own moral code or used exceedingly poor judgment.

The prosecution expert witnesses, in contrast, weighed appellant's mental condition and his actions and words at the time many of the offenses were committed, and generally opined that appellant's mental disease or defect did not deprive him of the ability to appreciate the wrongfulness of his conduct. Their opinions were based upon their views of appellant's mental condition during the times the offenses were committed, cf. Dubose, 47 M.J. at 388, his generally good record of performance as a judge advocate, his acclaimed performance as an instructor of law and ethics at the Army medical school, specific indicia of appellant's knowledge or acknowledgement of the wrongfulness, impropriety or illegality of some of his acts, the planning implicit in the commission of the offenses, and appellant's efforts to conceal his offenses from military authorities. Their testimony also focused on appellant's apparent cognitive abilities during the various criminal acts; appellant always appeared to understand what each transaction concerned.

There was also substantial testimony by lay witnesses concerning many irrational, even bizarre, acts of appellant, including actions or activities that were consistent with the diagnosis of bipolar disorder. At the times of the various illegal activities, however, no witness described appellant's conduct as bizarre or aberrant. There was also sub-

4. In contrast, a more usual situation might involve just one or two charged incidents, allowing the experts to better focus on the accused's mental condition at those times.

stantial lay testimony that the witnesses had no difficulty understanding or following appellant's conversations, although he tended to talk fast and to change subjects abruptly (which are also indications of bipolar disorder). Witnesses also testified that appellant had no difficulty communicating the plans he devised as investment opportunities, in convincing numerous persons to invest money in his schemes, or to loan appellant money. When later approached by an "investor" or creditor, usually seeking reimbursement of funds given to appellant, appellant had no difficulty remembering the transaction at issue and usually was able to convince the creditor that there was a rational, innocent explanation for appellant's failure to reimburse.

We conclude, as did the court-martial, that appellant failed to carry his burden of proving, by clear and convincing evidence, that he lacked the ability to appreciate the nature and quality or the wrongfulness of his acts constituting any specific offense.

We have reviewed the entire record and conclude the findings of guilty and the sentence are correct in law and in fact. *Cf.* UCMJ art. 66. The findings of guilty and the sentence are, therefore, affirmed.

Judge CURRIE and Judge BOOTH [5] concur.