UNITED STATES, Appellee

v

PAUL D. HOWARD, Seaman, U. S. Navy, Appellant

19 USCMA 547, 42 CMR 149

No. 22,647

July 10, 1970

*Lieutenant Kenneth F. Ripple,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *R. Jay Engel, Esquire.*

*Lieutenant Owen L. Heggs,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Lieutenant Thomas F. Bastow,* JAGC, USNR.

## Opinion of the Court

DARDEN, Judge:

In this case the Court's concern is with whether the appellant was improperly denied a right of cross-examination when the convening authority and the military judge denied his request that a doctor be returned from a hospital ship in the Western Pacific to be subjected to cross-examination.

A general court-martial at the United States Naval Station, Treasure Island, San Francisco, California, tried the appellant for desertion and for disobedience of a superior officer. He pleaded not guilty. The court found him not guilty of desertion but guilty of the lesser included offense of unauthorized absence and of the disobedience offense. After earlier appellate review his sentence stands as confinement at hard labor for six months, forfeiture of $50.00 per month for six months, and reduction to pay grade E–1.

The court-martial convened October 1, 1968. After the defense introduced testimony from a civilian psychiatrist that in his opinion Howard was legally insane at the time of his alleged offenses, the prosecution sought and

**547**

obtained, over the objections of trial defense counsel, a recess for the purpose of securing a mental examination of the appellant.

In accordance with paragraph 121, Manual for Courts-Martial, United States, 1951, the trial counsel requested the convening authority to have the appellant psychiatrically examined. On October 9, 1968, the Commandant, Twelfth Naval District, San Francisco, California, asked that the appellant be observed and that his mental condition be evaluated by a board of psychiatrists, including one certified by the American Board of Neurology and Psychiatry. In this request the commanding officer of the Naval Hospital at Oakland, California, was notified that: "The senior officer of the board should bear in mind that he may be called as a witness in the subject case and, therefore, should participate in all phases of this evaluation." By such a notification the convening authority could not eliminate the other participants in the examination from being relevant and material witnesses if the defense made an unqualified request that they be called as *defense* witnesses. This notification, however, was apparently intended only to designate the witness the Government might call.

The psychiatrists appointed for this purpose were Commander V. M. Holm, Medical Corps, United States Navy, as senior member, Lieutenant Commander P. T. Digaudio, Medical Corps, United States Naval Reserve, and Lieutenant R. J. Mehordin, Medical Corps, United States Naval Reserve.

From October 17, 1968, until November 20, 1968, the appellant had a psychiatric examination and observation at the United States Naval Hospital, Oakland, California. Before the appointed board met, Dr. Mehordin had been transferred in early November to duty aboard the U. S. S. SANCTUARY. The board's conclusion was that the appellant was legally sane but the board report was not brought to the attention of the court. Instead, Dr. Holm testified.

Appellate defense counsel argue that because Dr. Mehordin conducted some of the interviewing and examination of the appellant, Dr. Holm could not be effectively challenged on his testimony that the appellant was sane unless Dr. Mehordin also testified and was subjected to cross-examination. Because Dr. Holm's testimony on the extent of Dr. Mehordin's participation in the relationship of Dr. Mehordin's work to Dr. Holm's findings is important to an understanding of the issue, a part of Dr. Holm's testimony is set out below:

"Q [Individual Counsel]. Was Doctor Mehordin at that board when that board was reconvened?

"A. I do not recall. Presumably not, because his detachment was near —it was in the early part of November. Backdating from the date of the board, this would have been about the middle of November at the first meeting.

"Q. Now, you said on direct examination, I believe, something about Doctor Mehordin did much of the diagnosis, or something to that effect.

"A. Much of the interviewing associated with the background information; the mental status examination interviewing regarding the events of the alleged offenses, yes, sir.

"Q. Now, is this important information for forming a conclusion as to what the mental state was of Mr. Howard?

"A. Yes, sir.

"Q. And did the board take this information that had been compiled by Doctor Mehordin into consideration in reaching its conclusion?

"A. Yes, sir—but in what context? I'm not sure I understand.

"Q. Well, what I'm driving at is this information that Doctor Mehordin compiled is material that was considered by the board in reaching its conclusion?

"A. In part, yes, sir.

"Q. Would it be a fair statement to say that if Doctor Mehordin's information is incorrect, this would have

some bearing on the board's decision or conclusion?

"A. This is a matter of degree. I would say probably not very much, because I, myself, had also examined Mr. Howard to the extent that I could agree with Doctor Mehordin's findings. We in many ways retraced similar ground and independently developed similar information."

Paragraph 115 of the Manual for Courts-Martial, United States, 1969, provides *inter alia* that the trial counsel, defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence. When there is a disagreement between counsel on whether the testimony of a witness requested by the defense is necessary, the issue must be referred to the convening authority if the question arises before the court convenes or to the law officer if the question arises after the court convenes. This paragraph of the Manual provides that a request for the personal appearance of a witness will be submitted in writing with a statement signed by the counsel requesting the witness containing (1) a synopsis of the testimony that it is expected the witness will give, (2) full reasons which necessitate the personal appearance of the witness, and (3) any other matter showing that the expected testimony is necessary to the ends of justice. If the convening authority determines that the witness will not be required to attend the trial, the request may be renewed at the trial for determination by the law officer.

In this instance the record reflects that on December 12, 1968, the trial defense counsel wrote to the trial counsel to request that several doctors, including the three appointed as members of the sanity board, and J. J. Platinsky (a fourth doctor who signed as a member of the examining board), and L. D. Acord (a psychologist or individual signing the psychology examination), "be available at the time this court-martial reconvenes." This written request did not fully comply with the Manual requirement that it include a synopsis of expected testimony and reasons necessitating the personal appearance of the witnesses. Paragraph 115a, Manuals for Courts-Martial, United States, 1951, and 1969 (Revised edition). After further postponement the trial counsel on February 19, 1969, informed the convening authority in writing of defense counsel's request. The trial counsel enclosed a copy of the report of a psychiatric examination showing Dr. Mehordin as a member but signed by a Dr. Platinsky for Dr. Mehordin and recommended that the defense request be denied because of the trial counsel's opinion that the witness was not a necessary and material witness. He pointed out that Dr. Holm, the senior member of the board who was a board certified psychiatrist (which Dr. Mehordin was not at that time), would testify and could be cross-examined on the basis for his opinions. On February 27, 1969, the convening authority denied the request of the defense counsel for the attendance of Dr. Mehordin.

When the trial resumed on March 3, 1969, and after trial defense counsel extensively cross-examined Dr. Holm on his opinions about the mental condition of the appellant and the basis for these opinions, the trial defense counsel in an out-of-court hearing reiterated "my request that Doctor Mehordin be produced for *cross-examination* at this court-martial." (Emphasis supplied.) He indicated that he was prepared to put Dr. Platinsky, the fourth doctor who signed the report, on the stand and that Dr. Platinsky was prepared to testify that Dr. Mehordin should be called to get a proper determination on the sanity of the appellant. The law officer inquired whether there was anything to show that Dr. Mehordin's testimony would be contrary to the testimony of Dr. Holm. The trial defense counsel responded that his request was not based on knowledge that Dr. Mehordin would testify in contradiction of Dr. Holm but that he needed Dr. Mehordin to be examined to find the basis for the conclusions Dr. Holm drew. Defense

**549**

counsel also referred to the cross-examination of Dr. Holm that had occurred earlier:

"Q [Individual Counsel]. Would it be a fair statement to say that if Doctor Mehordin's information is incorrect, this would have some bearing on the board's decision or conclusion?

"A. This is a matter of degree. I would say probably not very much, because I, myself, had also examined Mr. Howard to the extent that I could agree with Doctor Mehordin's findings. We in many ways retraced similar ground and independently developed similar information.

"Q. When you say 'not very much,' does that mean that if his information was incorrect that it could affect the judgment or decision of the board to some degree?

"A. Only to the extent that whenever another professional person comes up with an opinion contrary to your own, you must consider that as a valid opinion and try to resolve the differences.

"Q. How do you decide whether it's a valid opinion, in the case of a doctor?

"A. When a competent person, having exercised due care, comes to an opinion, one must, I think assume that this is a valid opinion; it may not be necessarily one that you agree with, but it still is a valid opinion.

"Q. But if you were in a position where, as I assume you have in administrative hearings, your testimony is in conflict with another doctor's testimony, don't you find from your experience that the customary method of questioning the two opinions, yours and the other doctor's, is to inquire into the basis upon which you form your opinion?

"A. Yes, I would not disagree with that.

"Q. You would disagree?

"A. I would not disagree with that.

"Q. And in the case of your opinion, if I were going to go in to examine your opinion, isn't it a fair statement that in order for me to examine

your opinion, even though it is a valid opinion, but examine the weight that I would want to give it or this court would want to give to it, that a consideration in examination should be made of the findings that Doctor Mehordin made?

"A. Again, I would not disagree with that."

Our scrutiny of these answers satisfies us that Dr. Holm was responding to a hypothesis involving disagreement by Dr. Mehordin (or another professional person who served on the board) with Dr. Holm's opinion. Absolutely nothing in the record suggests that there was such a disagreement between Dr. Mehordin and Dr. Holm.

Later in the trial, this examination by the court occurred:

"Questions by the law officer:

"Q. Doctor [Holm], are all psychiatric evaluations the result of the observation of a person by more than the one doctor—in other words, are they all, within the Navy, the result of the observations of the individual concerned by a number of persons?

"A. Sir, I think the best answer to that would be that this would vary within the psychiatric setting in which a man was examined. On this Island, for instance, there's a psychiatric clinic perfectly competent to conduct psychiatric evaluations where a single psychiatrist would do the entire evaluation. But, at a Naval Hospital, many psychiatrists are available as well as nursing and hospital corps staff who are also considered competent to make an observation and add it to the record. In that setting, for diagnosis purposes, we may have many people actually see the person.

"Q. So in the hospital setting then—

"A. It would be normal to have many people contributing to an overall evaluation.

"Q. Now, at the time you examined the accused were you furnished information concerning the charges that were pending against him?

"A. I do not remember specific wording of the memo signed by

Admiral McCuddin, but my recollection is that it does, at least, allude to the offenses.

"Q. Now, then, did Doctor Mehordin disagree with your diagnosis in any manner or to any degree?

"A. No, sir.

"Q. And did you in any manner, or to any degree, disagree with Doctor Mehordin?

"A. No, sir.

"Q. Then do I understand that you and Doctor Mehordin were in full agreement?

"A. To the best of my knowledge we were, yes, sir."

The law officer denied the request that Dr. Mehordin be produced for cross-examination.

The United States Navy Court of Military Review agreed with appellate defense counsel that the defense was entitled to the presence of Dr. Mehordin but that "military necessity" excused the failure to produce him. We believe the Court of Military Review was mistaken in viewing the request as one for a defense witness instead of one for cross-examination of a witness the defense thought the Government was obligated to call.

The report of the sanity board was not introduced into evidence before the court. It is attached to the record as Appellate Exhibit 9. Hence there is no sound basis for contending that Dr. Mehordin was a witness before the court and that the defense had a right to cross-examine him.

Dr. Holm testified as a qualified expert. His opinions on the mental condition of the appellant were admissible even if they were based partly on data and opinions of others, so long as he testified about his own conclusions. United States v Heilman, 12 USCMA 648, 31 CMR 234 (1962); United States v Walker, 12 USCMA 658, 31 CMR 244 (1962).

On direct examination Dr. Holm testified that he had personally interviewed the appellant on at least two and possibly three occasions. On cross-examination he testified that he had noted some schizoid traits in the appellant's personality. That he was expressing his own opinion of the appellant's mental condition is made clear by the following question and response:

"Q [Individual Counsel]. So you examined him and at that time you were aware that somewhere in the records there had been some reference to schizoid, or traits that are related to a schizophrenic—is that right?

"A. No, sir. I do not recall that anywhere in the information I had prior to seeing Seaman Howard that there was any reference made to schizoid personality or, as you suggest, schizophrenic process. This is my own conclusion based on my own interviews and contacts with Seaman Howard that he did have some schizoid traits, perhaps not sufficient to qualify as a diagnosis to stand on its own. Does that make it more clear?"

It is of some significance that all the other participants in the board's examination except Dr. Mehordin who the defense requested be available were available at trial and none of them was called by the defense. When the issue was renewed at trial, nothing in the record reflects a defense request that Dr. Mehordin was desired as a *defense* witness. Instead the defense request was that Dr. Mehordin be made available for cross-examination. The defense should have wide latitude in its choice of witnesses and the accused should not be deprived of the right to summon as his witnesses those who may offer proof to negate the Government's evidence or to support the defense. United States v Sweeney, 14 USCMA 599, 34 CMR 379 (1964). The failure of the defense to furnish a synopsis of the testimony it expects from a requested witness is important in reviewing an asserted error resulting from abuse of discretion in failing to call a witness. United States v Harvey, 8 USCMA 538, 25 CMR 42 (1957). The crucial point in this case is that the defense is complaining not that it was denied the right to call a witness but that the Government did

not call a witness the defense wanted to cross-examine. To us this is a new departure in the law in this area.

In summary, Dr. Holm was a qualified witness. He testified about his own conclusions. Since the board's report was not introduced into evidence the defense was not prejudiced because it did not have the opportunity to cross-examine one of the board members. The extent to which Dr. Mehordin's examination may have affected Dr. Holm's conclusions is an item relating to the weight of Dr. Holm's testimony, not to the denial of an asserted right to cross-examine a person who is not really a witness.

The decision of the Court of Military Review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I disagree with my brothers' view in this case. Rather, I agree with the finding of the United States Navy Court of Military Review that it was error to deprive the accused of his right to cross-examine Dr. Mehordin. I cannot, however, accept the Navy court's holding that Dr. Mehordin's presence was excusable on the ground of military exigencies. Their reliance on Wade v Hunter, 336 US 684, 93 L Ed 974, 69 S Ct 834 (1949), is, in my opinion, misplaced. *Wade* involved a question of double jeopardy, which arose when the original court-martial was dissolved before reaching a verdict[1] and the accused was retried in another command. The Supreme Court, in holding that the retrial was not in violation of the Fifth Amendment's double jeopardy provision, stated that the reasons given by the Commanding General of the Third Army for the withdrawal of charges from the original court ("the 'tactical situation' of his command and its

'considerable distance' " from the situs of the alleged offense) (336 US, at page 687) reflected a *manifest necessity* for discontinuing the trial (The United States v Perez, 9 Wheat 579 (U. S. 1824)). As Mr. Justice Black, writing for the Court, stated:

". . . [A] defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." [Wade v Hunter, 336 US, at page 689.]

In the case at bar, Dr. Mehordin, at time of trial, was assigned to duty aboard a naval vessel operating in the Western Pacific area. His return to California for appearance at a court-martial hardly accords with the Navy court's view that in order to secure his appearance it would be necessary to "stop the war," and does not reach the level of the situation found in Wade v Hunter, supra. Absent its reliance on *Wade,* the Court of Military Review would have reversed on the ground of denial of due process, for, as it stated:

"From what has been said, it was error to deprive this accused of his right to cross-examine any witness timely requested, who, the record shows, as it does here from the evidence of Dr. Holm contributed observed data to a medical conclusion adverse to an accused on his trial by court-martial."

I agree with that view and, in light of the capability of the Government to make servicemen *available* as witnesses (cf. United States v Davis, 19 USCMA 217, 41 CMR 217 (1970); United States v Sweeney, 14 USCMA 599, 34 CMR 379 (1964)), I would hold that the denial of the defense request for the presence of Dr. Mehordin was reversible error since it constituted a violation of the accused's Sixth Amendment

---

[1] At the time the charges were withdrawn and the court-martial was dissolved, a continuance had been granted for the purpose of obtaining additional witnesses. It would appear from foot-

note 3 in Wade v Hunter, 336 US 684, 687, 93 L Ed 974, 69 S Ct 834 (1949), that these witnesses testified at the second hearing.

right "to be confronted with the witnesses against him." Constitution of the United States, Amendment 6.

As my brothers correctly note "[t]he crucial point in this case is that the defense is complaining not that it was denied the right to call a witness but that the Government did not call a witness the defense wanted to cross-examine." However, they state, "To us this is a new departure in the law in this area."

I confess that I do not understand the latter statement for an accused's right to be confronted by adverse witnesses is deeply rooted in the Constitution. The right to cross-examine such witnesses in open court is an obvious corollary. The convening authority's denial of the defense request, as well as that of the law officer, was based on the assumption that the opportunity to cross-examine the senior member of the medical board, which examined the accused, was sufficient to satisfy this constitutional prerogative. My brothers hold that since the medical board report was not introduced into evidence the defense was not prejudiced by its inability to cross-examine one of the board members.

It is of little consequence that the members of the court were not presented with the medical board report,[2] for the testimony of Dr. Holm was admittedly based not only on his own observations of the accused but on the work of the other members of the medical board as well. In point of fact, according to Dr. Holm, Dr. Mehordin, the requested witness, performed "much of the diagnostic work" concerning the mental status of the accused and even prepared the "original of the rough board" report.[3] Because of his participation on the medical board, and especially to the extent testified to by Dr. Holm, it cannot be denied that Dr. Mehordin is properly classified as a witness against the accused. Dr. Mehordin's findings were utilized by Dr. Holm in arriving at his opinion. The triers of fact clearly were aware of this. Before that evidence could be considered against the accused he must be afforded the opportunity to cross-examine Dr. Mehordin on a constitutional confrontation. Pointer v Texas, 380 US 400, 13 L Ed 2d 923, 85 S Ct 1065 (1965). Otherwise, the right of cross-examination of a witness against an accused in a criminal trial, where life and liberty may be forfeited, means nothing. Moreover, it is particularly desirable, as asserted by defense counsel, to engage a doctor by cross-examination to test his conclusions, and to inquire into the data upon which those conclusions are founded in order that the finders of fact may be enlightened and vote intelligently. The Government may not, by the simple expedient of not introducing the medical board report into evidence, deprive an accused of his constitutionally protected right.

We are not here concerned with whether Dr. Holm was competent to testify. That question was decided by a majority of this Court in United States v Heilman, 12 USCMA 648, 31 CMR 234 (1962), and United States v Walker, 12 USCMA 658, 31 CMR 244 (1962). The question here is the right of the Government and the law officer to deny a defense request to produce an identified adverse witness whose contribution to the case against the accused can only be classified as substantial. This issue, as recognized by the United States Navy Court of Military Review, was not present in either *Heilman* or *Walker*.

The request for Dr. Mehordin's presence was made on December 12th. Not until February 19th was defense counsel informed that the convening authority had denied his request. The renewal before the law officer took place when trial was reconvened on March 3d. Dr. Mehordin, along with two others, was personally selected by

---

[2] The medical board report was made a part of the record of trial, as Appellate Exhibit 9, during the hearing on defense counsel's motion before the law officer for the appearance of Dr. Mehordin.

[3] Dr. Holm testified that he edited and added to this report.

the Government and directed to gather evidence to be used by the prosecution in rebuttal of the defense testimony that the accused was insane. His absence from the area of the trial was also at the direction of the Government. The failure of the Government to honor the timely request for this adverse witness is, in my opinion, reversible error.

I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered.