UNITED STATES, Appellee,

v.

Sergeant (E–5) Randolph K. JONES, SSN 380–50–1455, United States Army, Appellant.

CM 436689.

U. S. Army Court of Military Review.

18 Dec. 1978.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Charles F. Schmit, Jr., JAGC, and Captain Willard E. Nyman, III, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, and Captain Douglas P. Franklin, JAGC, were on the pleadings for appellee.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

LEWIS, Judge:

Appellant was convicted by a military judge sitting as a general court-martial of attempted rape, larceny and unlawful entry.[1] His approved sentence consisted of confinement at hard labor for two years and six months, forfeiture of all pay and allowances for 30 months and reduction to the grade of E–1. He comes before us contending that: (1) he was denied a speedy trial in violation of *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971); (2) the military judge prejudicially erred by denying a defense request for witnesses; (3) the military judge prejudicially erred by admitting appellant's extrajudicial written admissions; and (4) the Government did not prove appellant's sanity beyond a reasonable doubt.

I

Appellant was placed in pretrial confinement on 6 May 1977. His trial commenced on 7 September 1977, a total of 125 days after the inception of his confinement. While conceding that some portion of the 125 days may not be "chargeable to the Government", he argues that the Government was accountable for a period substantially in excess of the 90-day standard es-

---

1. In violation of Articles 80, 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 921 and 934, respectively.

tablished by *Burton, supra.* The Government responds by asserting that the time required for a psychiatric board and a supplemental report conducted at the request of this appellant should be deducted from the 125-day period.

■ We start with the total period of pretrial confinement and set off against that period continuances or delays granted only because of a defense request and for its convenience. *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974). Appellant urges upon us an interpretation of *Driver* that restricts its applications to situations wherein the delay is *solely* for the convenience and benefit of the accused in the sense that, if the Government has any interest whatsoever in the matter underlying the defense delay, the time is not deductible. Specifically, they stress the Government's responsibility and consequent interest in assuring the mental competence and responsibility of criminal defendants. Certainly, this responsibility and interest cannot be gainsaid. But, weighty as it is, it is no different than the Government's (as society's representative) responsibility and interest in, for example, assuring that criminal defendants are represented by counsel who are ready to go to trial after an adequate time for preparation. Yet *Driver* involved a requested delay by the defense for that precise reason—to permit counsel to prepare for an Article 32 investigation. The better reading of *Driver* and its progeny is to say that *any* delay at the request of the defense is deductible provided the

Government would otherwise have been prepared to proceed with the processing of the charges or the trial of the case. It is splitting things too finely to say that indirect benefit to the Government, however real, will take a defense delay outside the rule of *Driver.* Indeed, we can scarcely imagine a case wherein a prosecutor would not research a little more law, hone his trial notes a little more finely, or put a little extra gloss on a graphic exhibit during a defense delay.

■ On the precise issue of delay for purposes of obtaining a psychiatric evaluation, *United States v. McClain,* 1 M.J. 60 (C.M.A.1975), held that such periods are not chargeable to the Government even when they are requested by the officer conducting the pretrial investigation. In the case *sub judice,* appellant's counsel submitted a request to the investigating officer on 12 April 1977 that "all evidentiary sessions" of the investigation [2] be delayed pending completion of a psychiatric evaluation for which the defense had just made independent and direct arrangements through medical channels. [3] This requested defense delay was subsequently expanded to allow the conduct of a full sanity board and await the written report before holding any "evidencing sessions." After an informal telephonic report of the results of the board were received on approximately 15 June 1977, the defense counsel agreed to proceed with sessions of the Article 32 investigation so long as the investigation was not closed before the written report was received. Two sessions

2. Conducted under the provisions of Article 32, UCMJ, 10 U.S.C. § 832.

3. Appellant also argues that the investigating officer had an independent duty under paragraph 121, Manual for Courts-Martial, United States, 1969 (Revised edition), to act after he received "notice as early as 9 April 1977 that there might be a question as to the appellant's sanity." In the instant case, this particular investigating officer saw no *issue* of sanity as having been raised. Rather, he merely allowed the defense the opportunity to submit appellant to evaluation in order to raise the issue. We decline to elevate the assertion of an issue, without statement of reasonable grounds, to the level of an issue raised. Appellant further argues that "the prosecution was on [even ear-

lier] notice of appellant's mental problems" based upon his referral from Germany to Walter Reed Army Medical Center for evaluation and treatment. In fact, the prosecution was not aware that the basis for his referral to Walter Reed was psychiatric. But even were we to hold the accuser, the intermediate commanders and the trial counsel to an omniscient standard, hindsight and the allied papers disclose that what they would have found out prior to the Article 32 investigation was that all psychiatric and psychological reports from WRAMC and Johns Hopkins Medical Institutions appeared to negate an issue of mental competence and responsibility. *Cf. United States v. Beach,* 1 M.J. 118 (C.M.A.1975).

were held on 22 and 30 June 1977, completing all testimony (a single witness) and submission of all documentary evidence except the sanity board report. This report, dated 5 July 1977, was received "sometime in mid-July." A hearing was held on 22 July wherein the report was received in evidence, the defense argued and the investigation was closed. It seems abundantly clear, and we so find, that the investigating officer was prepared to proceed promptly with the investigation and was stayed solely by virtue of the defense request of 12 April. This interruption of his investigation continued until 15 June when the defense agreed to proceed with the hearings based upon the telephonic results of the board. Another interruption occurred from 30 June until "sometime in mid-July" (we will assume 15 July). These periods totalled 69 days, were not unreasonable in the circumstances, and may be deducted from the period of processing time "chargeable" to the Government.

On 25 July, the Court of Military Appeals decided *United States v. Frederick*, 3 M.J. 230 (C.M.A.1977). On this basis, appellant at a pretrial session of court[4] successfully moved to have the sanity board reconvened to consider appellant under the *Frederick* standard. This was accomplished, with a final report rendered on 1 September 1977. This period amounted to 25 days and may also be deducted. Taken together, these deductions reduce the period of Government accountability to 31 days, well within the *Burton* rule.

Mindful as we are of the critical shortage of psychiatrists in the Army (the testimony in this case reflects 85 psychiatrists for a stated Army strength of approximately 600,000), we are nevertheless not prepared to hold uniformly that any time taken by a sanity board conducted at defense request is always chargeable to the defense. We will not yet presume to prescribe a time limit within which the frequently delicate task of psychiatric evaluation must be accomplished. By the same token, however, we cannot permit a casual, business-as-usual approach where criminal proceedings must be held in abeyance pending such evaluation.

## II

■ Prior to trial, the defense requested the trial counsel to produce two named military psychiatrists as defense witnesses, presumably pursuant to paragraph 115, Manual for Courts-Martial, United States, 1969 (Revised edition). This request was not contested and the trial counsel took the steps normally necessary to bring about their attendance at trial; *i. e.*, he dispatched electrographic messages to their commander at Walter Reed Army Medical Center (WRAMC) specifying the need, the dates of their attendance and requesting the issuance of appropriate orders. This request was not complied with.[5] At trial, prior to the Government's case-in-chief, the defense counsel moved for dismissal of charges based upon unlawful command influence in that the commander at WRAMC denied the request for the defense witnesses. The motion on those grounds was denied. The defense counsel then moved for a mistrial. The judge denied that motion as premature.

In its case-in-chief, the Government introduced the testimony of the victim of the alleged rape, larceny and burglary and the testimony of several criminal investigators. In its case-in-chief, the defense introduced the testimony of a psychologist and a psy-

---

4. Under the provisions of 39(a), UCMJ, 10 U.S.C. § 839(a).

5. The grounds for non-compliance appear to be a belief by the WRAMC staff judge advocate that paragraph 2–36, AR 40–1, would compel the defense to settle for the depositions of their requested psychiatrists. Certainly the policy statement contained in that regulatory provision favoring alternate means of securing the testimony of medical professionals is commendable where their time and skills are so valuable. But absent the consent of an accused to the use of such alternate means, their personal attendance at trial is still mandatory if they are necessary and material witnesses. We are aware of no blanket exception recognized for particular classes of witnesses and we believe none can be created consistent with the Constitution.

chiatrist (not one of the two requested), raising a defense of insanity. In rebuttal, the Government called a psychiatrist who testified concerning his conclusions based upon his examination of the appellant. Although the Government's psychiatrist was the president of the sanity board that examined the accused, he did not purport to speak for the members of the board, and the unanimous report of the board finding mental competence and responsibility was not entered into evidence on the merits.

The defense then renewed its request for the presence of the other two members of the sanity board with the following offer of proof: one would testify as to the standard of legal mental responsibility he applied in reaching his conclusion in the board report, and the other would testify as to whether the board utilized all of appellant's medical records in reaching their conclusions in the report. The defense counsel also asserted that these same two psychiatrists whom he was requesting would probably disagree with the government's witness on the issue of the appellant's mental responsibility. Counsel had never discussed with them whether they had changed their minds since they completed their report. He grounded his assertion on the basis that the experts he had already called apparently disagreed with the government's expert and therefore the odds were good that the two requested witnesses might also disagree. We cannot imagine more rash speculation, particularly where the requested witnesses have told the defense counsel nothing to impeach their previous individually signed board conclusions to the contrary. As regards the other offers of proof, there was no showing of materiality inasmuch as they would only tend to impeach a report not in evidence. *See United States v. Howard,* 19 U.S.C.M.A. 547, 42 C.M.R. 149 (1970).

■ Finally on this assignment of error, appellant argues that the military judge erred by reexamining the prior conclusion

inherent in the trial counsel's and convening authority's efforts to obtain the witnesses that they were necessary and material. The military judge is bound by no decision of a party, counsel or convening authority as to what evidence will be admitted at trial.[6] Accordingly, it would be anomalous to hold that a judge was powerless to rule that production of a witness whose testimony would not be admitted was not required. We do not give paragraph 115, MCM, 1969 (Rev. ed.), such interpretation. Appellant cites us to no other authority in support of his position, and we can find none in either the law or common logic.

### III

Appellant next contends that it was error for the military judge to admit appellant's extrajudicial confessions into evidence. He bases this on his further contention that his "prolonged exposure to questioning [by criminal investigators], coupled with his mental disorder, renders his admissions involuntary." In support, counsel points to the testimony of a psychologist who opined that persons with mental conditions similar to appellant's were predisposed to want to tell to persons who they perceive as sympathetic, everything they know about themselves, even to the point of self-incrimination. The criminal investigator to whom the contested admissions were originally given testified that one of his techniques in conducting interviews was to engender trust in the subject of the interview.

■ Appellant does not challenge the adequacy of any rights warnings given by the investigators in this case. Rather he bottoms his argument on the issue of voluntariness. Judgments on this issue are drawn from the totality of the circumstances of a particular situation, *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), to include the background and character of the individual being questioned.[7] The fact that a person is

6. *See* paragraphs 39, 53*d*, and 57, MCM, 1969 (Rev. ed.).

7. *Boulden v. Hoffman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *Lynumn v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); *Gallegos v. Colorado,* 370 U.S. 49, 82

easily led or of low mentality does not per se render any confession made by him inadmissible. In such a situation a confession may be coerced, and hence involuntary, with application of far less coercion than might be necessary to compel the confession of a stronger-willed individual. *United States v. Vigneault,* 3 U.S.C.M.A. 247, 12 C.M.R. 3 (1953).

■ In the instant case, there is absolutely no indication of overbearing conduct on the part of the investigators who took appellant's statement. Certainly, the mere passage of eight hours total time in the company of investigators, without more, is not coercive per se.[8] The questioning of appellant was conducted by individual investigators during normal duty hours without any deprivation of routine amenities. No threats or promises were made. No inducements were offered. Finally, and most significantly, the appellant, within minutes after entering a sedan for transportation and totally unsolicited, wrote out what amounted to a confession of unlawful entry and indecent assault involving the same incident. The contested confessions followed shortly thereafter. This is simply not the sort of situation wherein courts have suppressed admissions or confessions.[9] Appellant's charge sheet (DD Form 458) reflects more than 11½ years service. He was a sergeant (E–5). The conduct of the investigators was not overbearing but was designedly solicitous. Accordingly, we are unwilling to find error in the admission of the incriminating statements made by this accused who clearly followed his own inner promptings notwithstanding his possible predisposition to confess due to his mental condition. We decline to find error in their receipt into evidence in this case.

## IV

■ The final assigned error involves the sufficiency of the evidence of appellant's sanity. It devolves into whether the testimony of the government's psychiatrist or the defense's psychologist and psychiatrist is more persuasive. The military judge in this bench trial made special findings that appellant's abnormality is manifested only by repeated criminal or other antisocial conduct. Our own reading of the extremely lengthy testimony of the expert witnesses leads us to conclude that the analysis, descriptions, diagnosis and conclusions of the government's psychiatrist were more convincing. Accordingly, we find, beyond a reasonable doubt, that the appellant was sane under the standards of *United States v. Frederick, supra,* at the time of the offenses of which he stands convicted.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge DeFORD concur.

■

S.Ct. 1209, 8 L.Ed.2d 325 (1962); *Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *Fikes v. Alabama,* 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957).

**8.** The evidence establishes that at least two of the eight hours were spent in sedan transportation to a lie detector test in the company of a single investigator who drove the vehicle without questioning the appellant. On one leg of the journey, a non-police passenger may also have been present.

