**UNITED STATES, Appellee,**

v.

**Private First Class Clyde E. FREEMAN, Jr., 195–52–7543, United States Army, Appellant.**

**CM 446353, CM 446632.**

U.S. Army Court of Military Review.

23 Sept. 1986.

For Appellant: Lieutenant Colonel William P. Heaston, JAGC, Captain Harry L. Williams, Jr., JAGC, Captain Annamary Sullivan, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Captain Kathy J.M. Peluso, JAGC (on brief).

Before FELDER, NAUGHTON, and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

NAUGHTON, Judge: *

On 9, 26, and 27 January, 13 February, 6, 30, and 31 March, and 2, 3, 9, and 16–18 April 1984 appellant was tried by a general court-martial composed of officer members at Fuerth, Germany (hereinafter referred to as Freeman I). Contrary to his pleas, appellant was convicted of desertion, larceny, wrongful appropriation, robbery, and sodomy,[1] in violation of Articles 85, 121, 122, and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 921, 922, and 925 (1982) [hereinafter cited as UCMJ]. The members sentenced appellant to a dishonorable discharge, confinement for twenty-three years, total forfeitures, and reduction to Private E-1. The sentence was approved by the convening authority.

On 26 April, 4 and 7–10 May 1984, appellant was tried by a general court-martial composed of officer and enlisted members at Fuerth, Germany (hereinafter referred to as Freeman II). Contrary to his pleas, appellant was convicted of premeditated murder, in violation of Article 118, UCMJ, 10 U.S.C. § 918. The members sentenced appellant to a dishonorable discharge, total forfeitures, and confinement for life. The convening authority approved the sentence.

This court granted appellant's motion to consolidate both cases for appellate re-view.[2] Appellant has asserted ten errors. Appellant contends, *inter alia*, that he was denied a speedy trial in both cases, that the murder charge was improperly withdrawn and referred to another court-martial, and that there was a fatal variance between the pleadings and proof of the sodomy offense.

## FACTS

During the evening of 7–8 October 1983, Michael E, a German national, was killed. His body was found on 9 October. Since American involvement was not suspected, the crime was initially investigated exclusively by the German authorities. On 17 October appellant was arrested by the German authorities on suspicion of the murder and was interviewed. It was learned that appellant was an American soldier in an unauthorized leave status. The next day appellant was released to the American military authorities, whereupon he was placed in pretrial confinement and charged with desertion and premeditated murder.

On 7 December 1983 the additional charges of larceny, wrongful appropriation, robbery, and sodomy were preferred. An investigation was conducted pursuant to Article 32, UCMJ, between 16 and 27 December 1983 with the report being completed on 3 January 1984. Two days later, all charges were referred to trial by the convening authority.

At the initial session conducted under Article 39(a), UCMJ, 10 U.S.C. § 839(a), on 9 January 1984, appellant was arraigned on all charges. Various defense discovery motions were litigated at that time. On 16 January the military judge granted a defense motion for a psychiatric evaluation of appellant. On 27 January the military judge granted appellant's motion for a new Article 32 investigation of the murder

---

* Judge John F. Naughton took final action in this case prior to his reassignment.

1. Appellant was also charged with premeditated murder, but this charge was withdrawn after arraignment.

2. We commend Captain Sullivan and Captain Peluso for the exceptionally outstanding quality of the appellate briefs they have submitted in these cases.

charge.[3] The government's request for reconsideration of this ruling was denied on 13 February. The reinvestigation began on 8 March. On 9 March the trial counsel submitted a docket request for the trial of all charges except the murder charge. On 30 March 1984 the defense moved to dismiss all charges before the court for lack of speedy trial. The military judge denied the motion. The trial on the merits (Freeman I) commenced on 2 April 1984.

The reinvestigation of the murder charge was completed on 23 March. On 11 April the convening authority referred the murder charge to a general court-martial. On 26 April appellant unsuccessfully moved to dismiss the murder charge on the ground that he was denied a speedy trial. The trial on the merits (Freeman II) began on 7 May 1984. A chronology of significant events is set forth as an appendix to this opinion.

## SPEEDY TRIAL

◾ Appellant contends that he was denied a speedy trial on all charges (Freeman I and Freeman II) in contravention of the rule of *United States v. Burton*, 44 C.M.R. 166 (C.M.A.1971). *See also United States v. Driver*, 49 C.M.R. 376 (C.M.A.1974). If the government is accountable for more than ninety days of appellant's pretrial confinement, a presumption arises that Article 10, UCMJ, 10 U.S.C. § 810, has been violated and the government has the heavy burden of showing diligence[4] in order to rebut the presumption. *See United States v. Talavera*, 8 M.J. 14 (C.M.A.1979). Critical to appellant's contention is the accountability for two periods of time during the pretrial processing of these cases. Therefore, we must first determine the locus of responsibility for the time periods in question.

---

3. On 6 March 1984 the defense successfully moved for a different investigating officer.

4. The defense did not make a demand for speedy trial.

5. This file consisted of ninety-nine documents comprising over 350 pages.

The first disputed period arose in the context of several defense requests for the production of documents. On 20 October 1983 defense counsel made the first of several requests for the production of documents from the German investigation file. Since the homicide was initially investigated by the German authorities, satisfaction of the request necessitated translation of the entire file.[5] The defense insisted that it could not meaningfully participate in the Article 32 hearing without the requested documents. The defense received an English translation of the crime scene report on 30 November. On 19 December[6] the defense was provided with the ninety-nine documents from the file with an English index. The last of the documents was translated and provided to the defense on 16 January.

At an Article 39(a) session held on 30–31 March 1984, appellant argued that the defense was not responsible for the period of delay from 20 October to 16 December 1983 since the government was dilatory in responding to the discovery requests. After a lengthy hearing, the military judge made several specific findings of fact. The military judge found, *inter alia*, that:

> One, that the defense in this case was furnished with all relevant evidence in the possession of the United States at the Article 32 investigation;

> Two, the defense requests denominated in Appellate Exhibit One[7] amount to a general request for discovery;

> Three, the defense did not make any showing of a proper foundation or basis for the requests that were made in Appellate Exhibit One, nor were the materiality or relevance of the requested documents shown;

---

6. The defense had earlier requested a delay in the Article 32 hearing from 20 to 27 December 1983.

7. This exhibit contains fourteen documents dated from 20 October 1983 to 5 January 1984. While some of the requests were mere reiterations of earlier requests, it is clear the defense desire for information was extensive.

Four, the defense requests in Appellate Exhibit One amount to requests for delays in the Article 32 proceedings;

The documents that were provided the defense after October 21 were not favorable to the accused and did not provide him with a defense. They were not of such substantial value to the defense, nor did elementary fairness require their disclosure.

■■■ *United States v. Bean,* 13 M.J. 970 (A.C.M.R.), *petition denied,* 14 M.J. 291 (C.M.A.1982) involved a defense request for a translated German investigative report. In that case, as in this one, logic and reason dictate that if the defense wants the government to produce documents for the convenience of the defense, then the defense must accept responsibility for the reasonable period required to satisfy the request.[8] *See United States v. Colon-Angueira; United States v. Talavera; United States v. Rogers,* 7 M.J. 274 (C.M.A.1979); *United States v. Badger,* 7 M.J. 838 (A.C.M.R.), *petition denied,* 7 M.J. 392 (C.M.A.1979); *United States v. Batchelor,* 19 C.M.R. 452, 513 (A.B.R.1955), *affirmed,* 22 C.M.R. 144 (C.M.A.1956). The government routinely provides trial defense counsel with sufficient relevant information upon which to prepare for an Article 32 investigation. However, when the defense requests extraordinary items not necessary to the investigation, and satisfaction of such a request requires a considerable effort by the government, the defense must accept responsibility for the time required to satisfy the request. Here, the defense

went further and insisted that it could not meaningfully participate in the Article 32 without the translated German report. Taken as a whole, the actions of the defense amounted to a request for delay in the Article 32 proceedings. Accordingly, we adopt the findings of fact made by the military judge on this matter and agree that the defense is properly held accountable for the period from 20 October to 16 December 1983 for speedy trial purposes.

■■■ On 16 January 1984 the defense requested a psychiatric evaluation of appellant. The evaluation was completed on 27 February 1984.[9] It is well-settled that the reasonable time required to complete a defense requested psychiatric evaluation of the accused is accountable to the defense for speedy trial purposes. *See e.g. United States v. Colon-Angueira; United States v. Rogers; United States v. Bone,* 11 M.J. 776 (A.F.C.M.R.1981); *United States v. Jones,* 6 M.J. 770 (A.C.M.R.1978), *petition denied,* 7 M.J. 38 (C.M.A.1979). Accordingly, we agree with the military judge that the period from 16 January to 27 February 1984 is not chargeable to the government for speedy trial purposes.

■■■ We are now able to compute the time chargeable to the government for speedy trial purposes. The government's accountability began on 18 October 1983, the day appellant was placed in pretrial confinement.[10] Appellant recognizes that an Article 39(a) session litigating the speedy trial issue stops the government's accountability. *See United States v. Roman,* 5 M.J. 385, 387 (C.M.A.1978).[11] Here

---

8. We decline to engage in a conjectural analysis as to whether it would have been theoretically possible for the government to have translated and produced the requested documents on a timetable of the defense's choosing. Suffice it to say that the time required was reasonable in view of the nature of the requests and what was required to meet them. *United States v. Colon-Angueira,* 16 M.J. 20 (C.M.A.1983); *United States v. Talavera.*

9. This was the date agreed upon in Freeman II despite the fact that the completion date used in Freeman I was in March. We choose to resolve this inconsistency in appellant's favor and will use the earlier date.

10. While we agree with appellant that the government had substantial information on the robbery charge on the same date, instead of 1 November 1983, the distinction is not critical since we are employing the earlier date for overall computational purposes.

11. We note that Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 707(b)(3) [hereinafter cited as R.C.M.] prescribes a different termination date, however these cases were tried before the effective date of this provision.

the issue was litigated on 30 March 1984 (Freeman I) and 26 April (Freeman II). This results in the government being initially accountable for 164 days (Freeman I) and 190 days (Freeman II). The defense delay in the Article 32 hearing (fifty-eight days), the requested delay from 20 to 27 December 1983 (seven days), and the time required for the psychiatric evaluation of appellant (forty-three days) yield 108 days that are to be deducted from the government's accountability. As a result, the government is accountable for less than ninety days of appellant's pretrial confinement in both cases (fifty-six days in Freeman I and eighty-two days in Freeman II). Consequently, we conclude that appellant was not denied a speedy trial in either case.[12]

## WITHDRAWAL OF THE MURDER CHARGE

Appellant contends the murder charge was improperly withdrawn from the first court-martial. Relying on *United States v. Wright,* 40 C.M.R. 616 (A.B.R.1969) and paragraph 69c, Manual for Courts-Martial, United States, 1969 (Revised ed.) [hereinafter cited as MCM 1969], appellant asserts that the convening authority was required to return the murder charge to the first court-martial (Freeman I) after completion of the court ordered reinvestigation of that charge. We disagree.

*Wright* is clearly distinguishable on its facts. In *Wright,* a charge was reinvestigated and returned to the same court-martial. Then, for no apparent reason, the charge was withdrawn and referred to another court-martial. The Board of Review determined that it was improper to withdraw the charge from the first court and then refer it to a different court without a showing of good cause. In the instant case, the murder charge was withdrawn from the first court-martial (Freeman I) and was later referred to a second court-

martial (Freeman II). The military judge found that the separation of the murder charge from the remaining charges was for good cause. Significantly, the murder charge was not referred to the second court until after the trial on the merits had begun on the remaining charges.

On 27 January, the military judge ordered a new pretrial investigation of the murder charge (Charge II). On 9 March 1984, the trial counsel submitted a docketing request for the trial of all charges except the murder charge. The parties proceeded to trial with the understanding that the murder charge was not before the court. A speedy trial motion on the non-homicide offenses was litigated on 30 March. Appellant entered pleas of not guilty to those charges and specifications before the court. The members were not made aware of the murder charge. *See* paragraph 56d, MCM 1969. On 3 April, the second day of the government's case-in-chief, the defense moved to dismiss the murder charge on the ground that it had not been properly withdrawn and could not be "added" after the presentation of evidence without prejudicing appellant. The defense further argued that its choice of forum, its theory of defense, and types of motions were selected on the premise that the non-homicide charges would be tried first. The military judge denied the motion to dismiss and granted the defense a continuance to prepare for the trial of the murder charge along with the other charges.

On 9 April the defense reopened its objection and reversed its initial position. The defense now argued that the murder charge had, in fact, been withdrawn. *See Satterfield v. Drew,* 17 M.J. 269 (C.M.A. 1984). After a hearing on the issue, the military judge ruled, in pertinent part, as follows:

---

12. While the administrative handling of these cases was less than superlative, these cases were far more complex than normal.
The cumulative effect of the administrative and logistical obstacles involved amount to extraor-

dinary circumstances. The record establishes that the government was diligent in its response to the difficulties encountered.

I find that the actions of the SJA and [trial counsel] amount to a withdrawal of Charge II for referral to another court-martial. It is clear that when the trial counsel requested a trial date, he implied that Charge II was withdrawn. ... I find that the separation of Charge II from the remaining charges was for good cause, the good cause being the preservation of the accused's right to a speedy trial on the non-homicide charges. The trial of the non-homicide charges then proceeded to completion.[13]

 Two basic considerations applicable to trials by courts-martial are operative under the facts involved herein. One consideration is that normally, all known charges should be tried at a single trial. *See* paragraph 33*h*, MCM 1969. This is a statement of policy.[14] A second consideration is that charges must be brought to trial speedily. This is directed by Congress. *See* Article 10, UCMJ. When there is a conflict between a policy in the Manual and what Congress has directed in the UCMJ, the latter must prevail. *See United States v. Johnson*, 1 M.J. 101, 105 (C.M.A. 1975); *United States v. Ward*, 1 M.J. 21, 24 (C.M.A.1975).

 While paragraph 69*c*, MCM 1969 provides general guidance, it may not override the expressed intent of Congress. Therefore, paragraph 69*c* must be construed in light of what Congress has commanded concerning speedy trial. From this perspective it is readily apparent that appellant interprets the Manual provision too narrowly. Thus, while the reinvestigation of a charge will normally result in that charge being returned to the same court-martial, that result is not required in all cases. While appellant remained in pretrial confinement, his right to a speedy trial was

a legitimate concern of the government. In order to accommodate that right it was necessary to proceed to trial on the non-homicide charges. *See e.g. United States v. Johnson*, 14 M.J. 710, 712 (N.M.C.M.R. 1982), *petition denied*, 15 M.J. 187 (C.M.A. 1983). *Cf.* R.C.M. 906(b)(10) discussion.

If the reinvestigation of the murder charge had been completed before the trial of the non-homicide charges, the murder charge could have been referred back to the same court. However, when the trial on the merits began on 2 April, the murder charge had not been re-referred. There was no need to delay the trial of the remaining charges since the reinvestigation concerned only the murder charge. Accordingly, it was proper to refer the murder charge to another court-martial in view of the facts involved.

### VARIANCE

Appellant contends there is a fatal variance between the proof adduced at trial and the date alleged in the Specification of Additional Charge III, which alleges that appellant did, at Nuernberg, Germany, "on or about 1 April 1983, commit sodomy with Wolfgang N." At the trial (Freeman I) Mr. N testified that he and appellant had oral sex together in the Spring of 1982. The members found appellant guilty of the specification as charged.[15] Appellant contends that the variance between the date alleged and the date established at trial is fatal to the finding of guilt on that specification.

 A specification must "provide notice to an accused of the criminal offense against which he must defend, and provide a bar against a second trial for the same

---

13. On 11 April the convening authority redesignated the murder charge and referred it to another court-martial.

14. The convening authority is not required to refer all known charges to a single trial, but is vested with discretion in this matter. The facts involved permit the convening authority to determine if a single trial is appropriate. *See United States v. Thomas*, 37 C.M.R. 286 (C.M.A.

1967); *United States v. Smith*, 4 M.J. 809, 813 (A.F.C.M.R.), *petition denied*, 5 M.J. 306 (C.M.A. 1978); *United States v. Rose*, 40 C.M.R. 591 (A.B.R.), *petition denied*, 40 C.M.R. 327 (C.M.A. 1969).

15. Appellant was found not guilty of Specification 1 of Additional Charge I which alleged a larceny from Mr. N "on or about 1 May 1982."

offense." *United States v. Schwarz*, 15 M.J. 109, 111 (C.M.A.1983). *Accord United States v. Lee*, 1 M.J. 15, 16 (C.M.A.1975). *See Berger v. United States*, 295 U.S. 78, 83, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935). The specification in question alleges the offense, place, and person with particularity. Evidence adduced at the trial established these facts as alleged.

■ In general, a variance between the date charged and the date established at trial is not fatal if the latter is within the statute of limitations and before the charge is filed.[16] *United States v. Gehring*, 20 C.M.R. 373, 376 (C.M.A.1956). *Accord United States v. Phillips*, 664 F.2d 971, 1036 (5th Cir.1981); *United States v. Johnson*, 576 F.2d 1331, 1332 (8th Cir.1978); *United States v. Powell*, 564 F.2d 256, 259 (8th Cir.1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978); *United States v. Joyner*, 539 F.2d 1162, 1164–65 (8th Cir.), *cert. denied*, 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976). There is an exception to this general rule when time is of the essence to the charged offense. For example, time is of the essence when the accused is charged with several similar acts at the same place. *See United States v. Gehring; United States v. Henry*, 7 C.M.R. 680 (A.F.B.R.1952); *United States v. Little*, 5 C.M.R. 382 (A.F.B.R.1952). Time is also of the essence when it may change the nature of the offense [17] or alter the maximum permissible punishment. *See e.g. United States v. Krutsinger*, 35 C.M.R. 207 (C.M.A.1965).

■ Here, appellant was charged with one act of sodomy with Mr. N at Nuernberg, Germany. Whether the alleged act occurred in 1982 or 1983 would not change the nature of the offense or the maximum permissible punishment. Accordingly, we find that time was not of the essence with respect to the Specification of Additional Charge III.

Appellant asserts he was misled in his defense by the variance. This assertion is not supported by the record. Mr. N testified at the Article 32 hearing several months before the trial. His testimony there and at the trial reflect the same time period for the offense. Additionally, the trial defense counsel commented on the variance during his closing argument on findings.[18] Therefore, it is readily apparent that appellant was well aware of the discrepancy and was not misled in his defense of the charge. *See e.g. United States v. Gonzalez*, 661 F.2d 488, 492–93 (5th Cir.1981).

Appellant also asserts that the findings do not prevent a subsequent prosecution for the same offense. However, such a prosecution would be barred because it would require relitigation of factual issues resolved at the trial (Freeman I) and embodied in the findings of guilty to the Specification of Additional Charge III. *See United States v. Phillips*, at 664 F.2d 1006 n. 48; *Brown v. Ohio*, 432 U.S. 161, 166–67 n. 6, 97 S.Ct. 2221, 2225–26 n. 6, 53 L.Ed.2d 187 (1977), *citing Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). Accordingly, we find this assignment of error to be without merit.

In Freeman I appellant has also assigned errors regarding the replacement of the military judge, instructions on findings, introduction of photographs, and trial coun-

---

**16.** The statute of limitations for sodomy is three years. Article 43, UCMJ, 10 U.S.C. § 843. The sodomy charge was preferred on 7 December 1983.

**17.** The date of the offense would have such an effect if an accused was charged with having sexual intercourse with a female under the age of sixteen years, but the evidence established an act of sexual intercourse after the female's sixteenth birthday.

**18.** While trial defense counsel could have objected to the date variance during the trial, *see* paragraph 69*b*, MCM 1969, we will not second-guess his strategic decision to point out the discrepancy in his findings argument. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

sel's closing argument on findings. In Freeman II, appellant asserts that some photographs of the victim were erroneously admitted, that the evidence is not sufficient to establish premeditation, and that the mandatory life sentence is unconstitutional. We have examined all these matters in light of the record of each case and find them to be without merit.

The findings of guilty and the sentence approved by General Court-Martial Order Number 95, Headquarters, 1st Armored Division, dated 28 September 1984 (Freeman I) are affirmed.

The findings of guilty and the sentence approved by General Court-Martial Order Number 118, Headquarters, 1st Armored Division, dated 6 December 1984 (Freeman II) are affirmed.

Senior Judge FELDER and Judge ROB-BLEE concur.

## APPENDIX
### Chronology of Events

| | |
|---|---|
| 7–8 Oct 1983 | Homicide related offenses committed. |
| 18 Oct | Charges preferred; pretrial confinement begins. |
| 20 Oct | First defense discovery request. |
| 24 Oct | Investigating Officer (IO) appointed. |
| 25 Oct | Defense not satisfied with discovery; not ready for Art 32. |
| 11 Nov | Defense agrees to 28 Nov for Art 32. |
| 16 Nov | Defense letter to IO; not ready for Art 32. |
| 17 Nov | IO received defense letter stating 2 Dec was too early for Art 32—discovery problems. |
| 28 Nov | IO received translated crime scene report. |
| 30 Nov | Defense informed IO of receipt of crime scene report. |
| 5 Dec | Art 32 set for 19 Dec. |
| 7 Dec | Additional charges preferred; defense requests Art 32 delay 20–27 Dec. |
| 10 Dec | Art 32 reset to start 16 Dec. Defense requests German witnesses. |
| 16 Dec | First day of Art 32. |
| 19 Dec | Art 32 continues; defense given 99 documents from German investigation file with English index. |
| 27 Dec | Last day of Art 32. |
| 3 Jan 1984 | Art 32 report completed. |
| 5 Jan | All charges referred. |
| 9 Jan | 39(a) session; arraignment, discovery motions; trial counsel says ready 19 Jan. |
| 13 Jan | In-chambers conference on trial date. |
| 16 Jan | Defense request for psychiatric evaluation granted by military judge (MJ). |
| 26–27 Jan | 39(a) session. Defense motion for new Art 32 on murder charge granted by MJ. |
| 13 Feb | Trial counsel requests reconsideration of ruling on Art 32. MJ adheres to ruling. |
| 14 Feb | IO appointed for new Art 32. |
| 27 Feb | Sanity evaluation completed. |
| 6 Mar | 39(a) session. Defense motion for different IO granted by MJ. |
| 7 Mar | Different IO appointed. |
| 8 Mar | 2d Art 32 begins. |
| 9 Mar | 2d Art 32 continues. Trial counsel docket request for non-homicide charges. |