# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 OSHEA D. MILLER**
**United States Army, Appellant**

ARMY 20160422

Headquarters, United States Army Training Center & Fort Jackson
Christopher Fredrikson, Military Judge (arraignment)
Jeffery R. Nance, Military Judge (trial)
Lieutenant Colonel Robert L. Shuck, Staff Judge Advocate

For Appellant:  Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri (on brief); Major Julie L. Borchers, JA; Captain Cody Cheek, JA; Captain Benjamin J. Wetherell, JA (on reply brief).

For Appellee:  Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (on brief).

31 May 2018

---------------------------------
SUMMARY DISPOSITION
---------------------------------

MULLIGAN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of leaving his appointed place of duty, one specification of assault on a superior noncommissioned officer, and five specifications of assault consummated by a battery, in violation of Articles 86, 91, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, 928 (2012) [UCMJ].  The court sentenced appellant to a bad-conduct discharge and confinement for thirteen months.  The convening authority approved the sentence as adjudged and credited appellant with 233 days for pretrial confinement.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises three allegations of error, one of which merits discussion, but no relief. Appellant alleges that the charges and specifications are factually insufficient

because appellant could not appreciate the wrongfulness of his actions due to a severe mental disease or defect. We disagree. [1]

## BACKGROUND

Prior to enlisting in the Army, appellant was being treated for paranoid schizophrenia. During the enlistment process, appellant stopped taking his medications and was "off his medication" at the time of his accession into the active Army.

Appellant's military career was brief. Before dinner on the first day of basic training, while standing at the rear of the formation at the company training area, a drill sergeant directed appellant to stand still and keep his eyes front. Rather than comply, appellant responded "I can move wherever the f*** I want" and then struck the drill sergeant in the face. Appellant ran from the formation pursued by two noncommissioned officers. Throughout the chase, appellant yelled back at the pursuing noncommissioned officers that they were trying to kill him. After approximately a mile-long pursuit he was stopped, held and turned over to the military police.

Appellant's bizarre behavior and outbursts while at the Military Police Station caused the military police to transport him to the emergency room at a civilian hospital for evaluation. After conducting an examination of appellant, the emergency room doctor contacted the Moncrief Army Community Hospital and requested appellant be admitted to their inpatient psychiatric ward.

The following morning after breakfast, appellant was in the day room of the psychiatric ward with two other patients. Without warning or provocation, appellant stabbed a female patient in the head with a pen. A male civilian nurse then attempted to subdue and restrain appellant. In the course of the intervention, the civilian nurse and appellant fell; the civilian nurse suffered a broken leg. Appellant then asked a male patient in the day room, in effect, if he wanted to die, and then attempted to hold the patient's head back while stabbing him with a pen.

After his assault on the female patient, altercation with the civilian nurse, and stabbing the male patient, appellant made unsuccessful attempts to escape the day

---

[1] In his second assignment of error, appellant asserts the government elicited "human lie detector" evidence from a government witness. We find no merit in this argument. Appellant concedes the third assignment of error, that the absence of the Report of Result of Trial renders the record incomplete, was mooted by the government's inclusion of that document by motion to this court. After due consideration, we find the matter personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), lacks merit.

2

room by jumping from a window. The window was designed to prevent such escapes. The day room is located on the seventh floor of the Moncrief Army Community Hospital.

Prior to trial, appellant underwent a sanity board in accordance with Rule for Courts-Martial [R.C.M.] 706.[2] The sanity board concluded that appellant did have a severe mental disease, schizophrenia, but, at the time of the misconduct, was able to appreciate the wrongfulness of his conduct.

## LAW AND DISCUSSION

Appellant asserts the findings of guilty are factually insufficient because appellant could not appreciate the wrongfulness of his actions due to a severe mental disease or defect. Essentially, appellant asserts the findings of guilty are factually insufficient because trial defense counsel presented clear and convincing evidence of appellant's lack of mental responsibility. We disagree.

We review questions of factual sufficiency of the charges de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). We must be convinced that "after weighting the evidence of record and making allowances for not having personally observed the witnesses, [the court is] convinced of accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). The determination of mental responsibility is a factual issue that must be resolved by the factfinder. *United States v. Martin*, 53 M.J. 745, 747 (Army Ct. Crim. App. 2000).

"It is an affirmative defense to any offense that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts." R.C.M. 916(k)(1). An accused is presumed to have been mentally responsible for his acts until the accused establishes, by clear and convincing evidence, that he was not mentally responsible at the time of the offense. R.C.M. 916(k)(3)9A); *United States v. Hargrove*, 25 M.J. 68, 71 (C.M.A. 1987). "Clear and convincing evidence is that weight of proof which produces in the mind of the factfinder a firm belief or conviction that the allegations in question are true." *United States v. Martin*, 56 M.J. 97, 103 (C.A.A.F. 2001) (internal quotations omitted) (citations omitted).

For the defense of lack of mental responsibility, it is not enough to prove that an appellant suffered from a severe mental condition or defect. It is also not enough to prove that appellant engaged in some delusional thinking. What the defense must

---

[2] R.C.M. 706. Inquiry into the mental capacity or mental responsibility of the accused.

prove, is, that at the time of the assaults appellant was unable to appreciate the nature and quality or wrongfulness of his acts. *United States v. Mott*, 72 M.J. 319, 323 (C.A.A.F. 2013); UCMJ art. 50a.

There is no dispute between the parties as to appellant's actions. There is also no dispute that appellant was suffering from a severe mental disease at the time of his misconduct. The only dispute is whether appellant had the mental capacity to appreciate or understand his actions were wrongful.

In this case, although appellant did exhibit some symptoms of psychotic delusions, he was still able to appreciate the wrongfulness of his actions. His flight from the company training area indicates he knew his actions were wrongful and by running away he would avoid being apprehended. His eventual surrender to authorities, being the noncommissioned officers and military police, evidence his knowledge of the surrounding circumstances.

Especially detrimental to appellant's defense of lack of mental responsibility were statements he made to MAJ JA, a clinical and forensic psychologist, who interviewed appellant during the R.CM. 706 assessment. During this interview, appellant acknowledged that when he was being corrected for not standing still in line, he heard a voice say "F*** the Army. Punch him and run away." Appellant acted on the impulse to the voice, not because he was under an illusion that he was in imminent danger, perceived a threat, or felt justified in his actions.

Appellant also acknowledged during the sanity board that the assaults in the day room of the inpatient psychiatric ward were preceded by a voice giving him instructions. Prior to attacking the other two patients he heard the voice say: "Get revenge for what happened. . . . Your family is dead. Make us proud." While revenge is a motive, it is not a legal justification or excuse. Appellant admitted that he chose to arm himself with a pen prior to his assaultive behavior in the psychiatric ward because, "Well, I want to hurt people." And, to the crucial determination of knowledge of wrongfulness of his actions, appellant admitted that he knew it was wrong to hurt people but he still chose to do it.

Our review of the totality of the circumstances, to include appellant's statements during his R.C.M. 706 board and actions during and after the assaults, lead to our conclusion that appellant was mentally responsible for his misconduct and that he failed to prove the defense of lack of mental responsibility by clear and convincing evidence.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty are AFFIRMED.

4

Judge FEBBO and Judge WOLFE concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court